Shirley Irene BUSH *v.* Richard L. DIETZ,
ARKANSAS SOCIAL SERVICES

84-206                                    680 S.W.2d 704

Supreme Court of Arkansas
Opinion delivered December 10, 1984

*James DePriest,* for appellant.

*Vernon T. Kelly,* for appellee.

JOHN I. PURTLE, Justice. After a hearing the Probate Court of Perry County granted appellee's petition for appointment as guardian with the right to consent to adoption. No attorney or guardian ad litem was appointed for the children. The mother appeals on the grounds that the court erred in terminating her parental rights in violation of the requirements of Ark. Stat. Ann. § 56-128 (Supp. 1983) and in holding that the evidence revealed clear and convincing reasons to terminate the relationship. We agree that the findings of fact by the court in this case do not support the allegations of the complaint and the demands of Ark. Stat. Ann. § 56-128.

The two minor children in this matter are the natural children of the appellant Shirley Irene Bush, who is presently an inmate in the Arkansas Department of Corrections. She has been imprisoned since 1975 and is presently eligible for parole consideration. The children are ages 11 and 13 and have been in custody of the Social Services for almost nine years. They have been placed in several different foster homes. The oldest is a boy and is a resident student at the Arkansas School for the Deaf but, along with his younger sister, is now in custody of foster parents. They were removed from one foster home because of alleged sexual abuse of the girl by a foster father.

During her imprisonment the appellant has learned sign language in order to communicate with her son. His disability is the result of spinal menigitis when he was a baby. The children have visited the mother infrequently

while she has been in prison. Social Services was responsible for arranging visitation. The appellant requested semi-monthly visits but such visits were not arranged. She also requested that her children be placed in a foster home in Jefferson County in order to make visitation more easily arranged. This request was not complied with.

The appellant has served more than nine years on a 30 year sentence for first degree murder. She had no prior convictions. She is a class I inmate and according to some testimony a model prisoner even though she had trouble adjusting to prison life at first. Her defense to the murder charge was that the victim was trying to rape her. She has a G.E.D. and has made arrangements for her own care and that of her children when she is released on parole.

Admittedly she has not contributed to the support of the dependent children during the time she has been in prison. The fathers were not located. They have not appealed. Their whereabouts has been unknown for years.

On June 7, 1982, Social Services entered into a six month agreement with appellant concerning custody and visitation of the children. Among other things the contract stated: "I, Shirley Bush, realizing if my children are returned to me after parole, I will at this time begin to make plans for their appropriate care." This agreement was made seven years after the Department took custody of the children and only four months before the petition to terminate the parental relationship was filed by the Department. The petition for termination of the parental relationship alleged two grounds of unfitness: first, that placing the children in appellant's care would raise a substantial risk of physical and psychological abuse of the children; and second, that the parents had without reasonable or lawful cause failed to provide for the basic, essential and necessary physical, mental or emotional needs of the children for a period of one year immediately preceding the filing of the petition. The court also found that it would be in the best interest of the children to terminate the relationship.

The court made specific findings of fact and con-

clusions of law. However, there were no specific findings of fact to support all the allegations of unfitness of the mother as stated in the petition. Such findings are required by the provisions of Ark. Stat. Ann. § 56-128. Such proof must be shown by clear and convincing evidence. *A.B.* v. *Arkansas Social Services,* 273 Ark. 261, 620 S.W.2d 271 (1981). The specific allegations of unfitness were not discussed by the trial court. The specific allegation that the mother had "without reasonable and lawful cause to provide or to adjust her circumstances, conduct, or condition, so as to provide for the basic, essential and necessary physical, mental or emotional needs of the children for a period of one (1) year immediately preceding the filing of the petition," was taken directly from Ark. Stat. Ann. § 56-128 (H). There is no question but that the fathers' parental rights were properly terminated and that question is not before us. The finding that the mother failed to meet the responsibilities placed upon her by law rests almost entirely upon the fact that she was in prison and had no income of her own. For the same reason she failed to visit and communicate with her children. A representative of Social Services stated the mother had kept the promises made in the contract dated June 7, 1982. A part of that contract clearly indicated both parties anticipated that the appellant would be paroled and the children would be returned to her. Uncontradicted testimony by the mother was that the petitioner agreed with her in 1975 that if she pled guilty and went to prison she would have visits with her children. There is no real explanation why the Social Services waited several years to seek termination of the parental relationship. Certainly the cause would have been stronger before the mother adjusted to prison life and commenced preparations for being reunited with her children. Imprisonment of a parent imposes an unusual impediment to a normal parental relationship but is not conclusive on the issue. *Zgleszewski* v. *Zgleszewski & Horne,* 260 Ark. 629, 542 S.W.2d 765 (1976). We considered abandonment pursuant to Ark. Stat. Ann. § 56-128 in the case of *A.B.* v. *Arkansas Social Services,* supra, where we stated: "Mere incarceration is not conclusive on the issue of abandoment." Without the facts relating to imprisonment, about the only other facts relating to unfitness of the mother were incidents in her teenage life in Alabama. At that time neither child had

been born. Appellant was the victim of divorce. Her father was an alcoholic and her stepfather abused her. At age 13 she left home and thereafter she made her own way until she was imprisoned at the age of 20. These matters are too remote and sketchy to be of any real value in determining whether her rights as a natural mother should be terminated.

Any party seeking to terminate the parental relationship bears the heavy burden to prove by clear and convincing evidence that the parent has significantly and without just cause failed to communicate with or support the child as required by law or decree. *Harper v. Caskin,* 265 Ark. 559, 580 S.W.2d 176 (1979). Adoption proceedings are in derogation of the natural rights of parents, and statutes permitting such are to be construed in a light favoring continuation of the rights of natural parents. *Harper,* supra.

The best interest of the child is a matter of primary concern in adoption proceedings. Termination of the maternal relationship is much more far reaching than a change of custody. Adoption changes the natural relationship between parent and child; it changes the course of lives, the manner of inheritance, the people with whom the child associates, and cuts the ties and relationship between the child and the family of the parent whose rights are terminated. To make a decision based solely upon the best interest of the child could be a dangerous thing. A literal interpretation of what is in the best interest of the child could conceivably lead to a decision to award the child to the parties who were able to furnish the most material things for the comfort and pleasures of life. The wealthy, even though strangers, could take the children of the poor because the children would obviously be better off in a home of plenty. The phrase "best interest of the child" means more than station in life and material things. "Best interest of the child" includes moral, spiritual, material and cultural values, matters of convenience and friends and family relationships. We have recognized as a cardinal principle of law and nature that parents who are able to support their child in their own style of life, however poor and humble they might be, should not be deprived of parental privileges, except when urgently

necessary to afford the child reasonable protection. *Davis* v. *Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979).

Under the circumstances of this case we are of the opinion that the court's findings of fact and conclusions of law do not meet the criteria set forth in the petition for termination of parental rights as they related to the appellant at the time of the hearing on the petition. Parental rights are protected by the due process clause of the Fourteenth Amendment to the United State Constitution and Article 2, Section 8 of the Constitution of Arkansas. *Davis* v. *Smith*, supra.

Reversed.