## Lisa CASSIDY *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 01-045                                                      61 S.W.3d 880

Court of Appeals of Arkansas
Divisions II, III and IV
Opinion delivered December 5, 2001
[Petition for rehearing denied January 9, 2002.]

*James E. Hensley, Jr.*, for appellant.

*Kathy L. Hall*, Office of Chief Counsel, for appellee.

KAREN R. BAKER, Judge. The appellant, Lisa Cassidy, is the mother of two children, a daughter, L.C., and a son, C.C., who were born on August 2, 1989, and June 9, 1997, respectively. She is appealing from an order terminating her parental

rights, arguing that the decision is clearly erroneous because Arkansas Department of Human Services ("ADHS") failed to offer appropriate reunification services and because it is contrary to the best interests of the children. Appellant also contends that the chancellor erred in denying her mother's motion to intervene. We affirm.

On August 13, 1999, appellant was arrested for endangering the welfare of a minor based on an incident where C.C., then age two, was found naked and barefooted in a neighbor's yard playing with the neighbor's dogs, including a Rottweiler. The temperature outside that day was reportedly 105 degrees. Upon inspection of the home where appellant and the children lived with appellant's mother, Anita Cassidy, social services observed, among other things, mildewed dishes, trash, mice feces throughout the kitchen and pantry, live mice, a mousetrap sitting on a piece of furniture three feet high, and scissors on the floor. It was also known that C.C. had been found the week before playing at a Wal-Mart construction site several blocks away from the home. The children were taken into emergency custody, and after a hearing they were declared dependent-neglected because of inadequate supervision and environmental neglect. The initial goal and case plan was that of reunification, and services were provided that included homemaking services, in-home parenting and parenting classes, and referrals for individual and family counseling. Appellant underwent a psychological evaluation in September 1999, and three additional psychological examinations in March, June, and August of 2000. At the June examination, it was learned for the first time that appellant suffers from paranoid schizophrenia.

In the meantime, the case was reviewed in January and April of 2000. Appellant was allowed overnight, weekend visitation until April, when only supervised visitation was allowed after L.C. alleged that appellant's brother had molested her. At the permanency planning hearing held in June, the goal was changed from reunification to termination. After a hearing in October, the court granted ADHS's petition to terminate appellant's parental rights. The chancellor granted the petition pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 1999), finding that the children had been adjudicated as dependent-neglected and had remained outside of the home for one year and that, despite a meaningful effort by the department to rehabilitate the home, appellant had failed to remedy the conditions that had caused the children to be removed.

Appellant's first point is that the chancellor erred in finding that ADHS had provided adequate reunification services. Appellant contends that, although further psychological examination was recommended after her initial evaluation in September of 1999, she was not provided such an examination until March 2000. She argues that ADHS overlooked the need for treatment and aggressive intervention and that ADHS was at fault for the delay in her receiving treatment.

■ ■ The burden on the party seeking to terminate the parental relationship is a heavy one under Arkansas law. *Malone v. Arkansas Dep't of Human Servs.,* 71 Ark. App. 441, 30 S.W.3d 758 (2000). Arkansas Code Annotated section 9-27-341(b)(3)(Supp. 1999) requires that an order terminating parental rights must be based on clear and convincing evidence. When the burden of proving a disputed fact in chancery court is by clear and convincing evidence, the inquiry on appeal is whether the chancery court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Minton v. Arkansas Dep't of Human Servs.,* 72 Ark. App. 290, 34 S.W.3d 776 (2000). In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.,* 344 Ark. 207, 40 S.W.3d 286 (2001).

■ ■ The chancellor addressed this issue in some detail in her termination order. The chancellor noted that she had ordered appellant to undergo a psychological evaluation and three subsequent mental examinations and that the need for repeated examinations was attributable to appellant's lack of candor and her failure to disclose her history of mental illness, which manifested when she was a teenager. The chancellor also intimated that appellant's eventual disclosure about her mental illness only came after she had allowed ADHS access to her past medical records, which reportedly included a wealth of information about her long-standing illness. The chancellor noted the testimony of appellant's therapist, Lisa Doan, who testified that it was not unusual for appellant, because of her mental illness, not to divulge information about her mental illness. However, the chancellor found that appellant's credibility was lacking in many other areas as well. Specifically, the chancellor recalled that appellant had been untruthful when she had told the court that her brother had not been in the home during the weekend that L.C. alleged that her uncle had sexually abused her. The chancellor also noted that appellant's mother, who served as her guardian, had also failed to inform anyone of appellant's illness.

There was also testimony that appellant undergoes a yearly mental exam to maintain and receive social security benefits. Further, we note that we are disadvantaged in our review because the testimony and evidence offered at the permanency-planning hearing, which was incorporated into the final hearing for the court's consideration by agreement, has not been included in the record on appeal. From what we can gather from the termination order and brief references made in the testimony at the final hearing, the permanency planning hearing included the testimony of Ms. Doan, as well as testimony concerning appellant's involvement with the Ohio Department of Human Services. It is the appellant's burden to bring up a record demonstrating error. *S.D. Leasing, Inc. v. RNF Corp.*, 278 Ark. 530, 647 S.W.2d 447 (1983). From our review of the record presented, we cannot say that the chancellor's finding is clearly erroneous.

■ Appellant also contends that the chancellor erred in finding that termination was in the children's best interest. We disagree. The chancellor found that appellant was not fit to care for her children. The chancellor noted that appellant was dependent on her mother to care for her and to provide housing and that her mother had been included in the case plan out of Ohio, apparently without success. The chancellor further noted that, although appellant had completed all of the required classes and had maintained visitation, she had steadfastly refused to recognize that her behavior in not supervising the children was a problem of any concern. In this regard, the case worker testified as to her belief that appellant had been merely going through the motions of completing the requirements of the case plan and that her efforts were not sincere. The chancellor was also disturbed by appellant's failure to acknowledge the possibility that her brother had molested L.C. and that her refusal to entertain the notion represented an unwillingness to work on an appropriate solution. In a nutshell, the chancellor found that appellant was unable and unwilling to provide protection, security, and care for her children, as she had repeatedly demonstrated over a period of years. On this point as well, our review is hampered by the lack of a complete record. We cannot say that the chancellor's finding that termination was in the children's best interest is clearly erroneous.

■ Appellant's final argument is that the chancellor erred in denying her mother's motion to intervene. We agree with ADHS that appellant lacks standing to complain about the denial of her mother's motion. *See Burdette v. Dietz,* 18 Ark. App. 107, 711 S.W.2d 178 (1986).

Affirmed.

STROUD, C.J., ROBBINS, GRIFFEN, NEAL, and CRABTREE, JJ., agree.

JENNINGS, BIRD, and VAUGHT, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. I dissent from the majority's affirmance of the chancery court's termination of Lisa Cassidy's parental rights. Like all termination of parental rights cases, this one is difficult and the results are likely to be tragic whatever decision is reached. The majority sets forth the pertinent facts and holdings of the trial court in its opinion and it is not necessary to repeat those here. However, I am convinced that the chancellor clearly erred in finding that the Arkansas Department of Human Services (ADHS) provided adequate reunification services as required by Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) (Supp. 2001), and that appellant failed to take advantage of those services. The court also erred in relying on appellant's refusal to believe that her brother had sexually abused one of the children, when ADHS found the charge unsubstantiated.

This case, in its simplest form, is about whether a person suffering from mental illness has a right to demonstrate the ability to raise her children. Ms. Cassidy has shown a history of failure, lying, and denial when not on her medication. But, she has also shown that she can comply with almost all of the required directives when she is following the prescribed medication. Whether she would stay on the program indefinitely and be successful as a parent, no one knows, but the law requires that she be given a reasonable time to demonstrate her compliance, and I believe that she was denied that time in this case.

The termination of parental rights statute, section 9-27-341(b)(3)(B)(i), sets a benchmark of twelve months for a parent to respond to the programs offered by ADHS. However, this is in no way a limit requiring immediate termination at its completion. In the instant case, the precipitating act that set this case in motion occurred in August of 1999. The appellant was psychologically examined in September 1999 and March, June, and August 2000. However, it was not until the June 2000 examination that appellant was discovered to be suffering from paranoid schizophrenia. It was also established that she had a history of this mental illness for a long period of time. Nonetheless, on October 10, 2000, a termination hearing was held. Appellant had only been on her medication for a

couple of months at that time (since August or September 2000), but the ADHS (and eventually the trial court) relied on the previous twelve-month period to examine appellant's behavior.

If you examine appellant's progress the months prior to August 2000, and the months after August, there is a marked difference in the level of her compliance with parenting requirements. The testimony of Carolyn Williams, a DHS caseworker, at the termination hearing in October 2000, is especially illuminating. Although she supported the contention that appellant had gone for twelve months without complying with directives, she stated (with regard to the status at the time of the hearing) that "[t]he environmental concerns have been remedied. The [appellant's] home is now clean. . . ." Later she testified that appellant had complied with attendance at parenting classes and had generally complied with the court's orders. Ms. Williams testified that appellant's mental illness was responding well to medication, but she did not believe that appellant was honest because she had not alerted the court or ADHS to her prior mental problems. However, Ms. Williams admitted that denial and lying were common symptoms of paranoid schizophrenia.

The chancellor, in her termination order, found that the appellant had not, over a twelve-month period, shown that she was a fit mother for the children. However, with regard to the status of appellant at the time of the October 10, 2000, hearing, the chancellor found:

> The court notes that the testimony presented at this hearing indicates that Ms. Cassidy is now taking her medications for her mental illness, is still in therapy, and has complied with the court orders. Ms. Cassidy testified that she loves her children, had taken another parenting class, and would take another more intensive parenting class if ordered by the court.

In other words, appellant had finally, in only two months of medication, reached the level of compliance set by the court.

Since termination of parental rights is an extreme remedy and is in derogation of the natural rights of parents, *Anderson v. Douglas,* 310 Ark 633, 839 S.W.2d 196 (1988), a heavy burden is placed upon the party seeking to terminate the relationship of parent and child. *Bush v. Dietz,* 284 Ark. 191, 680 S.W.2d 704 (1984). If appellant had claimed disability pursuant to 42 U.S.C. § 12132, the Americans with Disabilities Act, she would have been entitled to a

reasonable accommodation to allow her to complete reunification services. *See* Ark. Code Ann.§ 9-27-341(b)(3)(B)(vii)(b). It only stands to reason that fundamental fairness requires ADHS to allow a reasonable time for appellant to show her compliance while on medication. I would reverse the court's finding that appellant was unfit.

Ms. Williams also testified that there was an allegation of sexual abuse by appellant's brother toward one of the children. Although the allegation was investigated, Ms. Williams stated that it was unsubstantiated. Appellant never believed the allegation and refused to acknowledge it. Ms. Williams testified that "[t]he main reason for my contention that parental rights should be terminated is that the family is not willing to even consider that Mark may have abused [L.C.]." The chancellor, in her termination order, relied on Ms. Williams's testimony and found that appellant's unwillingness to acknowledge the alleged abuse was evidence of unfitness because she would not provide security for the children. The court, in making this finding, acknowledged that the allegation was unsubstantiated and further acknowledged that appellant was cooperative in seeking therapy for the child allegedly abused. I believe that it is clear error for a court to rely on an unsubstantiated allegation to make a finding of unfitness, and I would reverse.

The twelve-month provision of the parental termination statutes should be interpreted to mean a reasonable amount of time for a parent to show her ability to take parental responsibilities. When a mentally ill person is diagnosed and put on controlling medication, the reasonable time should begin to run anew. While Ms. Cassidy may ultimately prove to be unfit, I believe that she should be given a fair opportunity to demonstrate otherwise.

I would reverse and remand, and I am authorized to state that Judges JENNINGS and BIRD join this dissenting opinion.