2011 Ark. App. 390

**Lori BRYANT, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 11–62.**

Court of Appeals of Arkansas.

May 25, 2011.

Leah Beth Lanford, Little Rock, for appellant.

Tabitha Baertels McNulty and Keith L. Chrestman, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Lori Bryant appeals from an order of the Columbia County Circuit Court terminating her parental rights to her daughter, A.F.[1] In her sole argument before this court, Bryant contends that the trial court's decision to terminate her parental rights was improper where A.F. had achieved permanency through a custodial placement with a relative. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody on October 8, 2009, alleging that Bryant and A.F.'s father had been arrested on October 6, 2009, on charges of possession of drug paraphernalia, delivery of a controlled substance, and endangering the welfare of a minor. During the arrest, police officers found a glass bulb used for smoking methamphetamine on the floor next to the bed in which A.F. was sleeping. Bryant's purse, also on the floor next to the baby's bed, contained another pipe and a small plastic bag with drug residue. The arresting officers called the Columbia County DHS office, which arrived to take custody of Bryant's three children, including A.F. A.F. was placed in the custody of her paternal aunt.

The circuit court initially set the goal of the case as reunification, ordering Bryant to submit to random drug screens, follow the recommendations of the drug and alcohol assessment, maintain a stable home, and attend counseling. At a review hearing in May 2010, the court determined that reunification should still be the goal of the case, noting that Bryant had "somewhat complied with the case plan and ... court orders in that she has completed in-patient drug treatment but has not complied with her aftercare plan."

A review order entered on July 2, 2010, noted that Bryant had provided an address and proof of employment, although she had not provided proof of out-patient drug rehabilitation. The court ordered Bryant to follow the case plan; attend and complete out-patient treatment; submit to weekly random drug screens and test negative on all of them; obtain and maintain stable employment; and obtain and maintain stable, clean, and adequate housing and keep all utilities on.

In a permanency planning order dated October 1, 2010, however, the circuit court found that return of A.F. to her mother's custody was contrary to the welfare of the juvenile. The court thus determined that it was in the child's best interest that the goal of the case should be adoption, and it directed DHS to file a petition for termination of parental rights. DHS filed the petition on October 8, 2010.

A termination hearing was held on November 5, 2010. Dawn Fears, the DHS caseworker assigned to the case, testified that despite the case plan's requirement that Bryant visit her child, Bryant did not make all of her visits. Fears also noted that Bryant was required to obtain stable

---

1. A.F.'s father, Greg Fuller, consented to termination of his parental rights. Bryant's two other children from another relationship were also taken into custody at the same time as A.F., but they were placed in the permanent custody of their father, and custody of those children is not at issue in this appeal.

employment, and although Bryant had gotten several jobs, she had been unable to hold any of them for more than a few weeks. Discussing the requirement that Bryant complete a substance-abuse treatment program and pass random drug tests, Fears stated that Bryant had not "worked very diligently" toward completing her out-patient treatment and had appeared to tamper with her drug tests. Fears also said that Bryant had lied in order to avoid submitting to a hair-follicle test.

Fears concluded that Bryant's efforts to comply with the case plan and the court's orders had not been consistent over the period of time that the case had been open. Fears noted that Bryant had been "evasive" throughout the history of the case, and Fears opined that she was uncertain whether any further efforts by DHS would result in reunification. Fears said that she felt that Bryant had not made efforts to overcome her drug problem and had not "ever been forthcoming to actually admit that she actually has a drug problem." Despite Bryant's having been given a year to make progress consistent with the needs of A.F., Fears said that Bryant had not made significant changes to the situation that brought her to DHS's attention. Fears stated that it was DHS's position that it was in A.F.'s best interest to change the goal of the case to adoption, and she testified that the child's aunt and uncle had come forward and were willing to adopt the child.

Jeffery Williams, the Columbia County supervisor for the Division of Children and Family Services, testified that, if the adoption by the aunt and uncle did not work out, circumstances were favorable for A.F. to be adopted by someone else. Angela Carter, A.F.'s aunt, testified that she and her husband were willing to adopt A.F. Carter noted that she and her husband

had continuously had physical custody of A.F. since the child was four months old, and during that time, Carter testified, the longest amount of time Bryant visited with her child was "an hour and a half, maybe two hours." Carter stated that she believed it was in A.F.'s best interest to remain with her and not return to her mother's home.

Bryant also testified at the termination hearing. She asserted that she had lived in her apartment since July 3, 2010, and was currently working approximately twelve hours a week at a job she had started on October 18, 2010. Bryant acknowledged that she had encountered difficulties with getting to her out-patient drug-treatment program, but she maintained that she had not attempted to alter her drug tests. Bryant asked the court for more time before terminating her parental rights "to see if I can get myself together." She conceded, however, that making nine dollars an hour at a twelve-hour-per-week job was "not enough for me and a child to live on."

At the conclusion of the hearing, the court found that A.F. had been out of the home for twelve months and stated that there was "no doubt that the circumstances and the conditions that brought this child into foster care are not corrected." The court found that Bryant had been deceitful in dealing with DHS with regard to her drug testing and rehabilitation and said that there was "nothing in this record that gives me any confidence whatsoever that two months from today or six months from today we will be any closer to returning A.F. to you than we are right now." Noting that there was an adoptive family "ready as we sit here," the court found that there was a risk of harm in returning A.F. to her mother and "nothing to indicate that those conditions are going to be corrected any time soon." Ac-

cordingly, the court granted the petition to terminate A.F.'s parental rights.

■ A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence. *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670; *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark.App. 193, 287 S.W.3d 633 (2008). The question this court must answer is whether the trial court clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark.App. 417, 278 S.W.3d 609 (2008). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Repl. 2008), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B). This court gives a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dowdy, supra.*

■ In her single point on appeal, Bryant argues that the trial court's decision to terminate her parental rights was improper under the juvenile code where A.F. had achieved permanency through a custodial placement with a relative. Under Arkansas Code Annotated section 9–27–338(c) (Repl.2008), at the permanency planning hearing, the circuit court must make a permanency goal in accordance with the best interest of the juvenile. Section 9–27–338(c)(3)(A) provides that the court may "[a]uthoriz[e] a plan for adoption with the department filing a petition for termination of parental rights unless ... [t]he juvenile is being cared for by a relative ... *and* termination of parental rights is not in the best interest of the juvenile." (Emphasis added.) Citing this statute, Bryant contends that termination of parental rights is not preferred if the minor child is being cared for by a relative. Thus, because A.F. had been placed in the custody of a relative, Angela Carter, Bryant argues that the trial court improperly determined that termination of parental rights was an appropriate permanency plan.

This argument, however, relies upon a statute that pertains to the permanency-planning hearing and the fifteen-month review hearing, and not the termination hearing itself. In *Velazquez v. Arkansas Department of Human Services*, 2011 Ark. App. 168, 2011 WL 715659, this court found that a similar argument was not preserved:

> The bar in this case is that appellant failed to bring up the record of the permanency-planning hearing where the goal was changed to termination of parental rights. While a termination order might bring up all intermediate orders, appellant did not designate the permanency-planning hearing in his notice of appeal, effectively waiving an argument that would relate to the trial court's decision which seems to run contrary to the clear language of Arkansas Code Annotated section 9–27–338(c)(3)(A). It is appellant's burden to bring up a record that demonstrates er-

ror. *Cassidy v. Ark. Dep't of Human Servs.*, 76 Ark.App. 190, 61 S.W.3d 880 (2001).

*Velazquez*, 2011 Ark. App. 168, at 5, 2011 WL 715659.

Similarly, in the present case, Bryant failed to designate the permanency-planning hearing in her notice of appeal. Although she designated the permanency-planning *order* in her notice of appeal, the transcript of that hearing is not in the record. There is no indication in the transcript of the termination hearing that Bryant ever raised this argument before the trial court. The failure to raise a challenge or obtain a ruling below is fatal to the appellate court's consideration of an issue on appeal. *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351; *Burkhalter v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 520, 2010 WL 2523098. Bryant had the burden of bringing a record before this court sufficient to make a determination of the issue presented. *See Burkhalter, supra.* Because she failed to do so, we conclude that her argument is not preserved for appeal, and we affirm without reaching the merits of her argument.

|₈Affirmed.

ROBBINS and BROWN, JJ., agree.