Kenneth S. Hixson, Judge, dissenting. ■ The trial court, and now a majority of this court, has created a paradox for Antonio Martini (“Antonio”), the father of his four-year-old daughter, E.M. In the divorce/child .custody case pending in Division I of the Circuit Court of Faulkner County, E.M.’s mother, Renita Martini Price (“Renita”), voluntarily agreed, and the court ordered, for Antonio to have visitation rights with his four-year-old daughter and Antonio was actively participating in those rights. Antonio would even have the right to petition for full custody of E.M. upon a showing of a material change of circumstances. Yet, simultaneously, across the Faulkner County courthouse, in Division IV of the Circuit Court, Renita’s new husband of only thirty days filed a petition to adopt Antonio’s four-year-old daughter and terminate Antonio and E.M.’s father/child relationship forever. The two cases were subsequently consolidated to create an even greater paradox. During the divorce/child custody portion of the case with the trial court wearing his “circuit judge” hat, Antonio fully participated in the litigation and actively engaged in his court-ordered visitation with his daughter. However, when the trial court changed hats and wore his “probate judge” hat in the adoption portion of the case, Antonio was muted and did not |9even have the right to withhold consent to the adoption of his own daughter despite the fact that he was entitled to, and was exercising, court-ordered visitation with her. Hence, the paradox: On the one , hand, Antonio could exercise his parental rights in fighting for visitation or even custody in the divorce/child custody case, while on the other hand, Antonio could not even contest his daughter’s adoption and termination of his parental rights in the adoption proceeding. I would reverse the adoption as to Antonio’s biological child, E.M., because in my view the trial court clearly erred in finding that Antonio’s failure to communicate with E.M. for more than one year was without justifiable cause.[1] Therefore, I respectfully dissent. On appeal from the adoption decree, Antonio admits that he had virtually no communication with the children for more than two years after Renita left the'marital home in the state of'Washington and moved with the children to Arkansas. However, Antonio argues' that this failure to communicate was not without justifiable cause[1] as required by the applicable statute. The thrust of appellant’s argument is that he was under" a two-year no-contact order issued by the Municipal Court in Snohomish County, Washington, through March' 2012. It is undisputed that this valid and enforceable no-contact order prohibited Antonio from having direct or indirect contact with Renita, under the threat and specter of two years’ incarceration in Washington State for a violation. Antonio argues that he was in effect unable to communicate with his two and four-year-old children because such' communication Imwould necessarily, and in' fact, involve direct or indirect contact with Renita which would be a clear-violation of the no-contact order and subject him to potential incarceration. During the two-year no-contact period, Antonio did not have the address or know the location of his children.[2] In Antonio’s testimony he acknowledged that he received one ietter from Renita in 2010. This letter did not contain a mailing address or disclose the location of the children, Instead, the return mailing address was from the Department of Human Services, by whom Renita was then employed. Antonio acknowledged receiving two or three emails from his children, which presumably had been typed and sent by Reni-ta, and he responded to those emails. However, Antonio stated that, after receiving no further emails from Renita, he did not send, any more emails because he thought Renita might be setting him up to violate the no-contact order. Antonio testified that, after this email exchange had occurred, Renita called his probation officers two or three times and had heated discussions with them, which resulted in the probation officers hanging up the phone on Renita. These exchanges between the probation officers and Renita prompted one probation officer to ask Antonio whether he had violated the no-contact order. Antonio further testified that he considered trying to set up telephone or Skype visitation with the children, but that both his probation officer and his lawyer advised against it, telling him that he would risk violating the no-contact order. Due to the children’s young ages, such a visitation technique would necessarily involve, at a minimum, indirect contact with Renita. | nParental rights are protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 2, Section 8 of the Constitution of Arkansas. Bush v. Dietz, 284 Ark. 191, 680 S.W.2d 704 (1984). In Matter of Adoption of Glover, 288 Ark. 59, 702 S.W.2d 12 (1986), the supreme court said that the power of the court in adoption proceedings to deprive a parent of- her child- is in derogation to her natural right to the child, and that statutes conferring such power should be strictly construed. The law is solicitous toward maintaining the integrity of the natural relation of parent and child, and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and 'against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. Glover, supra. The party seeking to adopt a child without the consent of the natural parent bears the heavy burden of proving by clear and convincing evidence that the parent failed significantly and without justifiable cause to communicate with the child. Courtney v. Ward, 2012 Ark. App. 148, 391 S.W.3d 686 (emphasis added). Under the particular facts presented in this case, I cannot agree with the trial court’s decision that the petitioning stepparent proved by clear and convincing evidence that Antonio’s failure to communicate with his daughter was without justifiable cause. In this case, Antonio had a reasonable threat of a two-year prison term if he contacted the children because he would have had to contact the mother, directly or indirectly, to communicate with the young children. Antonio testified that he sought advice from an attorney and from his probation officer and that both advised Antonio to wait for the end of 112the two-year probationary period to resume contact with the children. There is no indication in the record that there were any credibility issues with Antonio. Two months after the two-year probation period had expired, Renita filed for divorce in Arkansas and sought custody of the minor children. The divorce decree was entered on October 26, 2012. The divorce decree granted custody to Renita and visitation rights to Antonio. The decree specifically stated that they needed to start visitation “to reestablish a relationship” between Antonio and the minor children and ordered that visitation should be gradual with a therapist. The decree also looked forward and provided that, after a six-month period, the parties should review the visitation progress and determine how visitation should proceed. At the time the decree was entered, Antonio resided in Katy, Texas. Antonio attended every scheduled counseling and visitation session, driving approximately ten hours each way. At some point during the visitation schedule, Antonio moved to Wichita, Kansas. Again, Antonio attended every counseling and visitation session, driving about seven hours each way. It appears to this jurist to be highly inconsistent to reestablish a relationship by agreement of the parents and under the authority and guidance of a court order and then, on the other hand, simultaneously find that the father does not even have to consent to stepparent adoption thereby losing all rights to his daughter. The trial court’s finding of the one-year period of lack of significant communication was also strained. The order of adoption was entered on June 20, 2014, which was over 27 months after the two-year no-contact order had expired. The trial court was required by statute to find a one-year period of a lack of significant communication between Antonio and his daughter to justify its ruling that Antonio was not required to consent to his daughter’s | iaadoption. The Washington — State—imposed no-contact period expired on March 25, 2012. It is undisputed that there did not exist a one-year period of a lack of significant communication between March 25, 2012, and the date of the adoption on June 20, 2014. Therefore, in order to find a statutory lack of significant communication for a one year period, the trial court had to retroactively look back more than 27 months to find a one-year period. The only one-year period of a lack of communication occurred within the two-year Washington State no-contact period. It was during that subsequent 27-month overlooked period that Antonio was driving from Katy, Texas, and Wichita, Kansas, exercising his court-ordered visitation and counseling and “reestablishing the relationship” with his daughter. Justifiable cause means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. Courtney, supra. Given the undisputed fact that Antonio was under a no-contact order that prohibited him from contacting his wife in any fashion, directly or indirectly, during the more-than-one-year period he failed to communicate with his daughter under threat of incarceration, and his daughter was too young to be contacted directly, and other reasons set forth herein, I would reverse the finding that Antonio’s consent to her adoption was not required. It is uncertain whether attempts to contact the children would have actually resulted in a violation of the no-contact order and incarceration for two years, but in my view, these circumstances provided an adequate and justifiable excuse (one that was not arbitrary) for Antonio’s lapse in communication. Because the trial court clearly erred in |ufinding that Antonio’s failure to communicate was without justifiable cause, I would reverse the adoption of Antonio’s biological child, E.M. Abramson, Harrison, and Hoofman, JJ., join in this dissent. . I would affirm the adoption of G.L. because the trial court did not clearly err in finding that adoption to be in G.L.’s best interest. Antonio did not have the right to withhold consent for his stepson's adoption. . Antonio never knew the mailing address or location of the children during these proceedings. In fact, the trial court denied Antonio’s request for Renita to reveal the location. Antonio was, therefore, unable to directly locate or communicate with the children.