
# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-15-777

| | |
|---|---|
| | **Opinion Delivered** January 27, 2016 |
| MELISSA JOHNSON **APPELLANT** | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17JV-2013-195] |
| V. | |
| | HONORABLE MICHAEL MEDLOCK, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN **APPELLEES** | AFFIRMED |

## DAVID M. GLOVER, Judge

Melissa Johnson appeals the termination of her parental rights to L.R. and R.R. She contends the trial court failed to present a "qualified expert witness" pursuant to 25 U.S.C. section 1912(f) (Indian Child Welfare Act) and therefore failed to show that return of custody of the children to her was likely to result in serious emotional or physical damage. We affirm.

The facts of the case are essentially undisputed and can be briefly stated. Melissa was arrested on drug charges, and, eventually, her three minor children, L.R., R.R., and E.R., were taken into custody. However, only her rights to L.R. and R.R. are at issue here. The Indian Child Welfare Act was determined to be applicable based on Melissa's claim to membership in the Cherokee Nation of Oklahoma.

By order entered on February 2, 2014, all three children were adjudicated dependent-neglected. In April 2014, the Cherokee Nation began attending hearings via a

representative, Tad Teehee. The children's grandmother was also allowed to intervene in the case. The Arkansas Department of Human Services (DHS) attempted a trial return of custody to Melissa; however, the children were again removed in September 2014 when L.R. was discovered playing near the road at the apartment complex where they lived. Melissa was inside, asleep, and did not know where L.R. was. Her drug screen was positive for methamphetamine and THC. DHS subsequently filed a petition to terminate Melissa's parental rights. Tehee represented the Cherokee Nation at the April 30, 2015 termination hearing. At that time, Melissa was incarcerated but was present at the hearing.

DHS presented two witnesses in support of its petition to terminate Melissa's parental rights, Jamie White and Erica Enecks, two DHS employees who had worked with the family during this case. Jamie White testified she had been the caseworker on the case since February 28, 2014. She reviewed the history of the case and the services provided and offered her assessment that no progress had been made to resolve the issues that brought the children into DHS care. She opined the children would be at risk of serious harm if they were returned home. She also testified the children were adoptable.

Erica Enecks, the current supervisor on the case, testified she was the caseworker from December 2013 until February 28, 2014. She explained that DHS had offered services to Melissa, and it was her initial completion of some of the services that had led to the trial home placement. She reiterated the circumstances leading to the second return of custody to DHS in September 2014 and stated Melissa did not complete the second referral for drug- and–alcohol assessment after that incident. She also explained that Melissa had lost contact

with DHS prior to her incarceration and that her lack of contact and support for the children had continued during her incarceration.

Teehee offered his recommendation to the trial court. He explained it was the Nation's opinion that DHS made efforts to reunify the family and provided services to put the children back in the home, but those services proved unsuccessful, and one of the children was left to wander alone in a parking lot while Melissa tested positive for meth. He expressed the Nation's opinion that termination should be granted, that the children were adoptable, and that return of the children to either parent would result in emotional and physical damage to the children.

At no time during the hearing did Melissa attempt to voir dire the witnesses or raise any objection that DHS had failed to present a qualified expert witness pursuant to 25 U.S.C. section 1912(f). Following the hearing, both parents' rights to L.R. and R.R. were terminated by order entered on June 29, 2015, and this appeal by only Melissa followed.

In her appeal, Melissa characterizes her argument as one challenging the sufficiency of the evidence to support termination, contending that DHS was required to present "expert testimony" in proving its case under the ICWA, that DHS did not present any expert witnesses, and that consequently it failed to present sufficient evidence to support the termination of parental rights. We have concluded that the issue she raises on appeal is not truly a sufficiency argument, that it should have been argued below, and that because it was not, it was not properly preserved for our review.

Melissa acknowledges she raised no objection below that these witnesses had not

been qualified as experts, but contends she was not required to because the Indian Child

Welfare Act specifies that

> [n]o termination of parental rights may be ordered in such proceeding in the absence
> of a determination, supported by evidence beyond a reasonable doubt, <u>including
> testimony of qualified expert witnesses</u>, that the continued custody of the child by
> the parent or Indian custodian is likely to result in serious emotional or physical
> damage to the child.

25 U.S.C. § 1912(f) (emphasis added). She argues DHS failed to present the required

evidence under the Act because it failed to present the necessary expert witness, making it

a sufficiency-of-the-evidence challenge rather than an evidentiary challenge. While the

argument is clever and, if accepted, would bypass the preservation problems, we are not

persuaded.

In *Philpott v. Arkansas Department. of Human Services.*, 2011 Ark. App. 572, at 6, we

explained

> On appeal, appellant argues that the DHS case worker who testified at the
> termination hearing was not a "qualified expert witness" under the ICWA. *He failed
> to make this argument to the trial court, however, and it is well settled that arguments made
> for the first time on appeal will not be considered.* Appellant's counsel neither objected to
> McKay's testimony nor did he voir dire McKay regarding her qualifications as an
> expert under the ICWA. As such, the present arguments were never presented to
> the trial court, and the trial court had no opportunity to rule on them.

(Citations omitted and emphasis added.)

Melissa attempts to distinguish *Philpott* from the instant case by noting that the witness

in *Philpott* had been "qualified as an expert witness." While the *Philpott* opinion notes that

the trial court questioned the witness and that the witness testified she had been a caseworker

for almost seventeen years and had previously testified in termination proceedings involving

Indian children, it is not at all clear from the opinion that the trial court specifically found the witness to be an expert. We are not convinced of the distinction Melissa attempts to draw between the instant situation and that presented in *Philpott*. Moreover, even if a distinction exists, it is one without any significant difference, and, as in *Philpott*, the argument raised in this appeal should have been presented to the trial court if it was to be preserved for our review on appeal.

Affirmed.

KINARD, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring.** The majority concludes the issue raised by the appellant is not properly preserved. I write separately because I disagree that affirming should rest on the lack of distinction between the present case and *Philpott v. Arkansas Department of Human Services*, 2011 Ark. App. 572. In *Philpott*, the only person to testify at the termination hearing besides the appellant was a DHS caseworker. *Id*. at 4. At the close of the caseworker's testimony, and in response to direct questioning by the court, the caseworker testified that she had been a caseworker for almost seventeen years and had previously testified in termination proceedings involving Indian children. *Id*. at 5. On appeal, Philpott challenged the *qualifications* of the caseworker, arguing that she was not a qualified expert witness. *Id*. at 6. In the present case, Johnson argues that there was no evidence presented in the form of expert testimony and does not challenge the qualifications of an expert—because there was no expert. Instead, she contends that DHS failed to meet its required burden of proof by failing to present the required evidence, thus making it a

challenge to the sufficiency of the evidence. In a nonjury trial, a party who does not challenge the sufficiency of the evidence does not waive the right to do so on appeal. *Contreras v. Ark. Dep't of Human Servs.*, 2014 Ark. 51, at 2, 431 S.W.3d 297, 298.

The Indian Child Welfare Act is a federal statute that sets certain "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which reflect the unique values of Indian culture." 25 U.S.C. § 1902. When the Act applies, a state court may not terminate a parent's rights as to an Indian child unless (1) the court determines that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child," and (2) the court's determination is supported by evidence beyond a reasonable doubt that includes testimony from a "qualified expert witness." 25 U.S.C. § 1912(f).

While not binding on this court, the Bureau of Indian Affairs has promulgated guidelines for state courts to assist them in defining a qualified expert witness under the Act. *Burks v. Ark. Dep't of Human Servs.*, 76 Ark. App. 71, 76, 61 S.W.3d 184, 187 (2001). Those likely to meet the requirements of a qualified expert witness for purposes of Indian child–custody proceedings include:

> (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs . . .
>
> (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians . . .
>
> (iii) A professional person having substantial education and experience in the area of his or her specialty.

*Id.*

Here, we know that Tad Tehee, a representative of the Cherokee Nation, began participating in the proceedings as early as April 2014. He was also present at the termination hearing, where he offered his opinion to the court that the Cherokee Nation agreed with the ad litem's testimony that returning the juveniles to Johnson would cause emotional and physical damage to the juveniles and that Johnson's parental rights should be terminated. On appeal, Johnson argues that because Tehee was not sworn in, he cannot be considered as a qualified expert witness; however, because she did not object to the statement at trial, she is precluded from arguing its introduction on appeal. *See, e.g.*, *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285. Moreover, in her reply, she concedes that "[t]he circuit court at all stages of the proceeding made the required ICWA findings beginning at the adjudication stage all the way through until the termination order. Furthermore, the Cherokee Nation appeared and participated at all stages of the case—even offering a recommendation at the termination hearing." *See also Burks*, *supra*, 76 Ark. App. at 78, 61 S.W.3d at 189 ("We note that the Cherokee Nation agreed at trial that the parental rights of appellants should be terminated."). Because of the participation and oversight of the Cherokee Nation representative, I cannot say the purpose of the Act was compromised in this case. Accordingly, I would affirm.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.