2010 Ark. App. 469

**Karen DAVIS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 09–702.**

Court of Appeals of Arkansas.

June 2, 2010.

Suzanne Ritter Lumpkin, Little Rock, AR, for appellant.

Gray Allen Turner, Little Rock, AR, for appellee.

M. MICHAEL KINARD, Judge.

Karen Davis appeals from the order of the Pulaski County Circuit Court terminating her parental rights to five of her children. This is the second time this case has been before us. Counsel for appellant initially filed a no-merit brief and motion to withdraw pursuant to *Linker–Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). This court ordered that the case be rebriefed because counsel for appellant failed to discuss several rulings that were adverse to appellant. *See Davis v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 88, 2010 WL 307966. The case is now back before this court in merit form. On appeal, appellant argues that the trial court erred by refusing to allow more time for the maternal grandmother to remedy deficiencies identified in her home study or to explore less restrictive placement of the children through mediation. Appellant also argues that the decision of the circuit court to terminate her parental rights was not in her children's best interests. We affirm the order of the trial court terminating appellant's parental rights.

On November 27, 2007, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency/neglect. In the affidavits that accompanied the petition, the DHS family services workers stated that a protective services case was open on the family in Pulaski County. Appellant had a history of drug use. In November 2007, appellant was a patient in the detox program at Arkansas Cares. On or about November 24, 2007, appellant left the Arkansas Cares facility with three of her children. The other two were visiting their paternal grandmother in Texas. The three children were transported back to the facility by Arkansas Cares staff and appellant later returned. Later that after-

noon, appellant again left the facility, this time without the children. DHS exercised a seventy-two-hour hold on the three children who were present on November 24, 2007, and a second hold on the two remaining children when they returned to Arkansas on November 27, 2007. On December 4, 2007, the circuit court entered an order finding that DHS had probable cause to take the children into custody. The parties stipulated that the facts contained in the affidavits were true, and the circuit court entered an order finding that the children were dependent-neglected on January 17, 2008. That determination was based upon abandonment and parental unfitness by appellant.

On January 23, 2008, the trial court entered an order stating that the goal of the case was reunification, with a concurrent goal of permanent custody with a relative. Appellant was ordered to do the following: 1) participate in individual counseling; 2) refrain from the use of illegal drugs or alcohol; 3) enter and complete in-patient treatment for substance abuse; 4) submit to random drug screens; 5) attend AA/NA meetings; 6) maintain stable housing and employment. In a review order entered April 17, 2008, the circuit court continued custody of the children with DHS and stated that appellant had failed to comply with the case plan. The court noted that appellant admitted to continued drug use. The court determined that the children's father had partially complied with the case plan. Appellant was again ordered to enter and complete residential drug treatment. Following permanency planning hearings held on October 1, 2008, and November 4, 2008, the circuit court entered an order on November 24, 2008, that continued custody of the children with DHS and changed the goal of the case to termination of parental rights and adoption. The court found that both parents had partially complied with the case plan. At the hearing, appellant testified to continued drug use and the father tested positive for drugs. Both parents stated that they wanted the children's grandmothers to have custody, but the court found that the permanency goal of obtaining a permanent custodian with either of the grandmothers was not appropriate.

On December 10, 2008, DHS filed a petition for termination of parental rights. In the petition, DHS alleged that the children had been adjudicated dependent-neglected and continued out of the custody of appellant for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused the removal, those conditions had not been remedied by appellant. On February 20, 2009, counsel for appellant filed a motion for continuance, for mediation, and to shorten response time. The court denied the motion but continued the hearing because the father's attorney could not attend.

At the beginning of the termination hearing, the court dismissed the father from the petition because the children were not removed from his custody and DHS failed to plead a ground upon which his rights could be terminated. During the hearing, an adoption specialist for DHS testified that the children were adoptable, although she stated that the two oldest children did not want to be adopted. Tabitha Watson, the family-services worker assigned to the case, testified that appellant tested positive for cocaine on December 19, 2008, and failed to give DHS any indication of where she was living or her employment status. According to Watson, appellant was offered weekly visitation, but she only visited the children seven times between December 12, 2007, and February 20, 2009. Watson further stated that the home study for the mater-

nal grandmother, Becki McConnell, was denied because her husband had a prior allegation of child abuse and stated in the study that he did not want the children to live in his home. Watson testified that DHS was also concerned about McConnell's financial stability if she divorced her husband and he moved out of the home. According to Watson, McConnell was asked in May 2008 to begin the home study process, but she did not give approval to begin the process until August 2008. Watson did give an opinion, however, that McConnell's home would be the best place for the children if she were able to work out the problems with the home. DHS's recommendation was that appellant's parental rights be terminated and that the children be placed for adoption. Watson testified that she did not believe that splitting the children up would be in their best interest. Watson stated that the oldest child wanted to live with a family member and stated that he did not "feel welcome" living with strangers. Darryl Capps, the Court Appointed Special Advocates (CASA) supervisor, testified that it was CASA's recommendation to terminate parental rights.

Appellant testified that she was living in a motel room. She stated that she believed the best place for her children to be was with her mother. She further testified that she had not visited the children because she knew she would be high on drugs. Appellant stated that her mother told her that she had filed for divorce from her husband, but appellant did not know the exact date of the filing.

At the conclusion of the hearing, the circuit court found that the grounds alleged for termination had been proven by clear and convincing evidence and granted the petition. On April 7, 2009, the circuit court entered a written order granting the petition to terminate appellant's parental rights. Appellant filed a timely notice of appeal on April 16, 2009.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Supp.2009). Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(B) (Supp.2009). Our statute provides, as a ground for termination, that the child has been adjudicated dependent-neglected and has continued out of the custody of the parent for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark.Code Ann. § 9–27–341(b)(3)(B)(i) (a) (Supp.2009). We do not reverse a termination order unless the circuit court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007).

Appellant's first point on appeal is that the circuit court's "refusal to either allow additional time for the children's maternal grandmother to remedy the deficiencies in the denied home study, or to allow exploration of the less restrictive placement through mediation, was error where the termination petition for the children's father was dismissed, thus alleviating the need to immediately terminate the mother's parental rights which resulted in severing the grandmother's standing to further pursue placement of the children." At no point in her brief does appellant argue that the statutory grounds for termination of her rights were not proven by clear and convincing evidence. Instead, she is arguing that the trial court erred in finding that termination was in the children's best interests because it would keep

her mother from being considered a placement for the children. Appellant's testimony that she was living in a hotel and continuing to use drugs well over a year after her children were taken into custody makes it clear that the children would be subjected to a substantial risk of harm were they to be returned to her custody.

In making her argument that her parental rights should have been kept intact, appellant relies upon Arkansas Code Annotated section 9–27–355(c)(1) (Repl.2009) which states that "a relative of a juvenile placed in the custody of the department shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the juvenile's best interest to be placed with the relative caregiver." Appellant's argument is misplaced. There is no comparable language in section 9–27–341, which is the termination statute. Section 9–27–355 concerns an initial placement of a juvenile after that juvenile is taken into DHS custody, not a placement when termination of rights has been requested.

In addition, appellant's argument ignores the evidence produced at the hearing that her mother's home does not meet all relevant child-protection standards and that placement in the maternal grandmother's home would not be in the children's best interests. At the time of the termination hearing, Becki McConnell was married to a man who, in addition to indicating that he did not want the children, had previously been accused of child maltreatment. The only evidence at the hearing that McConnell had taken any steps at all to remove her husband from her home was appellant's testimony that her mother told her that she had filed for divorce. There was no other proof that a divorce filing had been made, nor was there any indication when it was filed or how long the process would take.

Even if McConnell sought and were granted a divorce, there was evidence presented indicating that she might not be able to care for the children financially. McConnell's home study showed that she had a personal monthly income of $1900, and that she and her husband had total monthly expenses of $3262. Even accounting for Mr. McConnell's share of the monthly expenses, it still appears that McConnell might be unable to care for a sibling group of five. Finally, there is the fact that, although the children had been in custody since November 2007, McConnell only consented to beginning the home study process in August 2008, almost nine months later. All of this evidence demonstrates that the circuit court's decision to terminate appellant's rights instead of subjecting the children to further potential instability by waiting to see if McConnell would eventually be an appropriate placement was not clearly erroneous. In addition, appellant has failed to demonstrate how the termination of her parental rights would completely remove the possibility that her mother could be a placement for the child as there is no indication that McConnell would be ineligible to adopt the children if she met all of the necessary requirements.

Appellant's second point on appeal is that the trial court erred in terminating her parental rights because it was in the children's best interests that they remain together as a "cohesive unit for placement." The testimony at the hearing was that it would be in the best interests of the children to be kept together. Appellant argues that the evidence showed that the children would not be able to be adopted together, and that this made termination of her rights not in her children's best interests.

The adoptability of the children is but one factor for the trial court to consider in determining whether to terminate parental rights. *See McFarland v. Ark. Dep't of Human Servs.*, 91 Ark.App. 323, 210 S.W.3d 143 (2005). The testimony indicated that the children would likely be adopted, and, although DHS could not point to a specific placement for the children, it indicated that there were a number of families willing to consider adopting the children. As shown above, keeping the children with appellant would likely expose them to harm. In addition, it was not clear from the evidence that appellant's mother would be a suitable placement within a time frame suitable for the children, if at all. Therefore, there was no evidence presented indicating that keeping appellant's parental rights intact is any more likely to allow the children to stay together than termination. The trial court's decision to terminate was not clearly erroneous.

Affirmed.

BAKER and BROWN, JJ., agree.