SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-461

| | |
|---|---|
| CAROLINE ADAMS<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND E.F.,<br>A MINOR<br><br>APPELLEES | **Opinion Delivered** March 2, 2016<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. J-13-749]<br><br>HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

## RAYMOND R. ABRAMSON, Judge

Caroline Adams appeals from the March 6, 2015 order of the Washington County Circuit Court terminating her parental rights to her two-year-old daughter, E.F.[1]  This case reaches us for the second time on appeal after we ordered rebriefing, specifically directing Adams's counsel to address whether the Indian Child Welfare Act (the "ICWA") was applicable to the proceedings below.

Adams's counsel argues that the ICWA did not govern and, therefore, the higher standard that would apply for termination of parental rights to an Indian child was not applicable. Adams's counsel has refiled a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), asserting that there are no issues of arguable merit to support the appeal

---

[1] Bobby Frakes is the child's biological father, and his rights were also terminated on March 6, 2015, but he is not a party to this appeal.

and requesting to be relieved as counsel. The motion is accompanied by an abstract and addendum of the lower court's proceedings and a brief which explained why none of the trial court's rulings present a meritorious ground for appeal.

In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), counsel for Adams has reviewed the record for all rulings adverse to her made by the court on all objections, motions, and requests, and there were none. The clerk of this court notified Adams that she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3). Adams has filed pro se points. For the following reasons, we grant the motion to withdraw and affirm.

On December 26, 2013, the Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect after Caroline Adams was arrested and charged with third-degree domestic battery by Fayetteville police on December 20, 2013.[2] The trial court entered an ex parte order for emergency custody on December 26, 2013, which placed E.F. in the custody of DHS. On January 3, 2014, the court found probable cause and set the adjudication hearing for Friday, January 31, 2014.[3] In an order entered on

---

[2] The incident arose from a domestic disturbance between Adams and her mother, Darlene Lisa Brown. Adams admitted to the arresting officer that she had used methamphetamine, and the officer believed that she had recently swallowed an unknown amount of methamphetamine.

[3] In the court's January 3, 2014 order, it noted that since Adams was a member of the Choctaw Tribe and the putative father was a member of the Cherokee Tribe, the respective tribes would be provided a copy of the petition, notice of the next scheduled hearing, and advice of rights pursuant to the ICWA. However, there is nothing in the record to indicate that the issue of ICWA compliance was ever raised by Adams. As such, we are barred from considering on appeal any challenge related to ICWA. *See Lauman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 564 (which held that the failure to raise ICWA argument below barred the appellate court from considering the challenges for the first time on appeal).

SLIP OPINION

February 5, 2014, the court found, by clear and convincing evidence, that E.F. was dependent-neglected and was at substantial risk of serious harm as a result of neglect by Adams.

The court specifically found that Adams was under the influence of methamphetamine, that she had admitted to ingesting large amounts of methamphetamine, and that she had been arrested for domestic battery against her mother. Adams had been taken to Washington Regional Medical Center for medical treatment and hospitalized for several days due to ingestion of methamphetamine. There was no legal caretaker for E.F. because the putative father had not yet established paternity and was living in Maryland. At the time of the hearing, Adams was incarcerated on charges of conspiracy to deliver methamphetamine.

On June 18, 2014, a review hearing was held, and the court found that the goal of the case was reunification with a concurrent goal of adoption. Adams continued to remain incarcerated. She had not maintained contact with DHS, had not submitted to weekly drug screens or a drug-and-alcohol assessment, and had not attended parenting classes offered. Adams, however, stated that she was in counseling in prison and was availing herself of programs offered to her while incarcerated.

On November 5, 2014, the court held a permanency-planning hearing, and the court found that Adams had not complied with any of the court orders or the case plan. On November 17, 2014, DHS filed a petition for termination of Adams's parental rights. In the petition, DHS alleged that terminating Adams's parental rights was in the juvenile's best interest and that the juvenile would be subject to potential harm if returned to her mother's

SLIP OPINION

custody. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Repl. 2015). DHS also alleged that the child had been adjudicated dependent-neglected and had continued to be out of appellant's custody for more than twelve months and, despite meaningful efforts by DHS to rehabilitate appellant and correct the conditions that caused removal, those conditions had not been remedied by appellant. Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*).

DHS also purported that other issues had arisen after the filing of the original petition that demonstrated return of the child to appellant's custody would be contrary to her health, safety, or welfare, and despite the offer of appropriate family services, appellant had manifested the incapacity or indifference to remedy the subsequent issues or factors. Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*). Specifically, DHS alleged that Adams had remained incarcerated throughout the case on charges of manufacturing, delivery, and possession of methamphetamine. She did not obtain stable housing or employment, did not submit to drug screens, and did not maintain contact with DHS. Further, DHS argued that Adams's fourteen-year sentence in the Arkansas Department of Correction constituted a substantial time period of the child's life, as the child was almost two years old at the time, and Adams had been incarcerated for a majority of the child's life. Ark. Code Ann § 9–27–341(b)(3)(B)(viii).

On February 4, 2015, the court held the termination hearing and found that DHS had proved by clear and convincing evidence all the grounds alleged in the petition. Because the ICWA was not applicable, this was the correct burden of proof. The order terminating

SLIP OPINION

Adams's parental rights was entered on March 6, 2015, and this no-merit appeal follows.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *King v. Ark. Dep't of Human Servs.*, 2014 Ark. 278. However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id.* Termination-of-parental-rights cases are reviewed de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). In determining whether termination is in the child's best interest, the circuit court must consider the likelihood that the child will be adopted if the termination petition is granted and must consider the potential harm, specifically addressing the effect on the health and safety of the child caused by returning the child to the custody of the parent, parents, or putative parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins, supra.* This court does not reverse a termination order unless the circuit court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing

court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 636 (2006). However, in determining whether a finding is clearly erroneous, an appellate court gives a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of witnesses. *Dinkins*, *supra*.

In this case, termination of Adams's parental rights was appropriate. Adams remained incarcerated throughout the entire case after being sentenced to fourteen years in the Arkansas Department of Correction. DHS caseworker Rasheda Morris testified that E.F. was likely to be adopted, explaining that DHS had found another adoptive placement only two days after learning that the current foster parents could not adopt at that time.[4] In Adams's pro se points on appeal, she argues that termination was improper because E.F. could have been placed in another relative's home. However it is well settled that this court has rejected this argument:

> Arkansas Code Annotated sections 9-27-355(b)(1) and 9-28-105, which concern the placement of juveniles by DHS, both state that a relative of the juvenile shall be given preferential consideration for placement if the relative meets all relevant child protection standards and it is in the best interest of the juvenile to be placed with them. However, section 9-27-341 [the termination-of-parental-rights statute] does not contain any such requirement, and this court has held that section 9-27-355 is not relevant to a request for TPR.

*Ogden v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 577, at 5; *see also Henderson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 430; *Davis v. Ark. Dep't of Human Servs.*, 2010 Ark. App.

---

[4] E.F. was in a preadoptive placement with Ms. Adams's aunt and uncle, Carlene and Fredie Huffman.

469, 375 S.W.3d 721 (holding that the statutory provision applies only to initial placement and not to placement when termination of parental rights has been requested). Here, caseworker Morris's testimony that E.F. was adoptable was sufficient to support the adoptability factor of the termination statute. *See Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004).

At both the termination hearing and in her pro se points, Adams argues that even though she was sentenced to fourteen years in the penitentiary, she would be released on parole in eight months. However, it is the length of the sentence that controls, not whether the parent is eligible for an early release through parole. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(viii). Because Adams was sentenced to a fourteen-year term of imprisonment when E.F. was less than two years old, the trial court's findings were not clearly erroneous.

Adams argues for the first time in her pro se points that there is no proof that DHS provided a copy of the petition to the Cherokee and/or Choctaw Tribes. However, as noted previously, the record before us contains no indication that the issue of ICWA compliance was ever raised by Adams in the trial court proceedings. As such, it is not preserved and is barred from being addressed here. *See Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, 413 S.W.3d 542.

There were no adverse rulings other than the termination itself. Having carefully examined the record and the brief, as well as Adams's pro se points, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit

appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the order terminating Adams's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HARRISON and GLOVER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Mischa K. Martin*, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.