SLIP OPINION



Cite as 2014 Ark. 51

# SUPREME COURT OF ARKANSAS

No. CV-13-858

| | |
|---|---|
| MONICA CONTRERAS<br>                  APPELLANT | **Opinion Delivered** February 6, 2014 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. JV-12-190] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES; CHRISTINE<br>WILLIAMS; AND J.G., A MINOR<br>CHILD<br>                  APPELLEES | HONORABLE STACEY<br>ZIMMERMAN, JUDGE<br><br>REVERSED AND REMANDED;<br>COURT OF APPEALS' OPINION<br>VACATED. |

## KAREN R. BAKER, Associate Justice

Appellant Monica Contreras appeals from the permanency-planning-hearing order and closure order of the Washington County Circuit Court. The Court of Appeals affirmed the circuit court's decision, finding appellant's argument that the evidence was insufficient was not preserved. *Contreras v. Ark. Dep't. of Human Servs.*, 2013 Ark. App. 519, ___ S.W.3d ___. We granted review. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Russell v. Russell*, 2013 Ark. 372, ___ S.W.3d ___. Contreras argues that the circuit court erred in granting permanent custody of her child, J.G., to Contreras's mother, Christine Williams. Contreras contends that there was not sufficient evidence to show that such placement was in the best interest of J.G.[1] We reverse and

---

[1]In a civil, nonjury trial, a party who does not challenge the sufficiency of the evidence does not waive its right to do so on appeal. *Oates v. Oates*, 340 Ark. 431, 10 S.W.3d 861 (2000).

SLIP OPINION

remand the order of the circuit court.

On February 22, 2012, the Arkansas Department of Health and Human Services (DHS) exercised a seventy-two-hour hold on J.G. pursuant to Arkansas Code Annotated section 9-27-303 (Supp. 2011). Contreras had dropped J.G. off at Huntsville Intermediate School that morning and had not picked him up. Huntsville police were unable to contact Contreras. The Washington County Circuit Court, Juvenile Division, filed an ex parte order for emergency custody on February 27, 2012.

The circuit court entered an adjudication and disposition order on March 29, 2012, in which it adjudicated J.G. dependent-neglected. J.G. was temporarily placed in the custody of Williams, with the goal of reunification with Contreras. The court required Contreras to (1) cooperate with DHS; (2) keep DHS informed of where she was living and any changes in telephone number or address; (3) participate in individual counseling; (4) refrain from use of illegal drugs and alcohol; (5) submit to random drug screens weekly; (6) obtain and maintain clean, safe, and stable housing and employment; (7) demonstrate ability to protect J.G. and keep him safe from harm; and (8) maintain contact with her attorney.

Two weeks after the adjudication order was entered, on April 13, 2012, at the behest of DHS, the circuit court issued a bench warrant for failure to appear at a show-cause hearing and for contempt of court, as Contreras had (1) failed to call DHS weekly; (2) failed to cooperate with DHS; (3) failed to follow through in counseling; and (4) failed to submit to weekly random drug screens. Contreras was arrested on the bench warrant on April 24, 2012,

and sentenced to 30 days in jail on the contempt charges.[2]

Five months later, on September 5, 2012, the circuit court entered an order finding that Contreras had made some progress toward alleviating or mitigating the causes of J.G.'s removal from the home and completing the court's orders and requirements of the plan. Contreras had completed a psychological evaluation, completed parenting classes, and had passed five nonrandom drug screenings. The court also found that Contreras would be moving into an apartment in Texas on August 31, 2012. However, Contreras had not completed her drug-and-alcohol assessment, was on probation stemming from the charges in Texas, and was involved in a custody case over J.G.'s younger half-brother, who lived with his paternal grandmother. Although the circuit court found that it was in J.G.'s best interest to remain in the custody of Williams, the goal of the case remained reunification.

On November 14, 2012, the circuit court granted Contreras supervised visitation once per month, on two consecutive days for at least one hour. A second agreed order for supervised visitation was filed on December 20, 2012, awarding supervised visitation for at least two hours.

The circuit court held a permanency-planning hearing on January 18, 2013. A DHS report, prepared the previous day, stated that Contreras had been compliant with her case plan, noting she had (1) obtained a residence in Arlington, Texas, (2) been employed since June 2012, (3) completed counseling, (4) been cooperative with the department and contacted

---

[2]Contreras was released by an order filed May 1, 2012, so that she could travel to Dallas, Texas, to appear before the criminal court there, where she pled guilty to two unrelated charges and was sentenced to 10 days in jail.

her caseworker regularly, (5) completed parenting classes in Texas in July 2012, and (6) completed her psychological evaluation on June 20, 2012.

Caseworker Anastacia Moore testified that J.G. was doing well in his current placement with Christine Williams. J.G. was doing very well in school and was receiving counseling twice a week. When the counselor approved visitation, J.G. began supervised visits, where, at first, he displayed hostility towards his mother. But in subsequent visits "they seemed to be getting along."

According to Moore, J.G. "looked like he was enjoying himself," during his visit with Contreras but he told her he was not. Moore stated that Contreras was currently in compliance with the case plan. She stated that she was "conflicted" about whether it was in J.G.'s best interest to return to mom because "he doesn't want to be with his mother." She conceded, however, that some of J.G.'s aggression toward his mother concerned things he would not have been aware of if he hadn't been told about them by a third party.

Christine Williams, Contreras's mother, stated that J.G. was "doing great in our home" and getting good marks in school. Williams asserted that "we love J.G. so much" and wanted him to remain in her home. According to Williams, she gave J.G. a horse as "therapy." She asserted that Contreras was inadequate as a parent.

Contreras confirmed that she was complying with the case plan. She denied Williams's allegations, and asserted that her mother and her new husband had substance abuse problems. Contreras admitted to having been placed on probation because of a fight with a friend who was a police officer and to serving ten days for a DWI. However, she claimed that she now

seldom drank alcohol. Both the DWI and the fight predated the case plan as they occurred before J.G. was removed from Contreras's custody.

Although J.G. attended the hearing, his wishes were made known by a letter in which he stated that he wished to stay "with my nana and papa because I feel safe," and also because he has his "own room, bed, t.v., remote controlled helicopter, mp3 player, and game system." The attorney ad litem recommended that J.G. remain with his grandmother and that Contreras continue to have supervised visitation.

At the January 18, 2013 hearing, the circuit court noted that Contreras had made "some good progress" but stated that she had not made "enough progress with [J.G.'s] trust." It granted permanent custody in Williams and closed the case. Less than eleven months had elapsed since J.G. was adjudicated dependant/neglected. Despite granting permanent custody of J.G. to Williams, the circuit court granted Contreras extended unsupervised visitation during spring and summer breaks as well as on holiday weekends. The permanency-planning-hearing order and closure order, filed on February 15, 2013, stated that Contreras was in compliance with "some of" the case plan and court orders.

This court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Lamontagne v. Ark. Dep't. of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* Furthermore, this court defers to the trial court's evaluation of the credibility of witnesses.

5

*Id.*

Contreras asserts that there was insufficient evidence presented in the permanency-planning hearing to show that it was in J.G.'s best interest to grant permanent custody to Williams. She contends that the circuit court erred in not following the requirement of Arkansas Code Annotated section 9-27-338(c) (Supp. 2011), that J.G. be returned to his natural parent. Contreras asserts that there was no evidence adduced in the permanency-planning hearing to show that she was a threat to her child.

We are mindful that this statute was amended by the Arkansas General Assembly effective August 15, 2013, but because the hearing was held prior to that date, we apply the version of the statute in place at that time. In pertinent part, it states as follows:

> (c) At the permanency planning hearing, based upon the facts of the case, the circuit court shall enter one (1) of the following permanency goals, listed in order of preference, in accordance with the best interest of the juvenile:
> (1) Returning the juvenile to the parent, guardian, or custodian at the permanency planning hearing if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home;
> (2) Authorizing a plan to return the juvenile to the parent, guardian, or custodian only if the court finds that:
> (A)(i) The parent, guardian, or custodian is complying with the established case plan and orders of the court, making significant measurable progress toward achieving the goals established in the case plan and diligently working toward reunification.
> (ii) A parent's, guardian's, or custodian's resumption of contact or overtures toward participating in the case plan or following the orders of the court in the months or weeks immediately preceding the permanency planning hearing are insufficient grounds for authorizing a plan to return home as the permanency plan.
> (iii) The burden is on the parent, guardian, or custodian to demonstrate genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to authorize a plan to return home as the permanency goal;
> (B) The parent, guardian, or custodian is making significant and measurable progress toward remedying the conditions that caused the juvenile's removal and the juvenile's continued removal from the home; and

(C) The return of the juvenile to the parent, guardian, or custodian shall occur within a time frame that is consistent with the juvenile's developmental needs but no later than three (3) months from the date of the permanency planning hearing;

. . .

(5) Authorizing a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative.

Here, the circuit court found that it was not in J.G.'s best interest to be placed in Contreras's care because J.G. had concerns about being in his mother's custody and because it was "supported by the record" that Contreras had not been stable.

Contreras asserts that this finding was error because no evidence was submitted to show that J.G.'s health and safety would not be adequately safeguarded. We note that the circuit court made no findings about whether J.G.'s health and safety could be safeguarded in his mother's custody, the caseworker testified that her report did not list any reasons why J.G. would be unsafe in Contreras's home. However, the safeguarding of the juvenile's health and safety is only part of the statutory requirement. Returning the juvenile must also be in the child's best interest. We must therefore determine whether the circuit court's finding, that returning J.G. to Contreras's custody, was not in his best interest was clearly erroneous.

Here, there was sufficient evidence to find that it was in J.G.'s best interest to remain in Williams's temporary custody. J.G. was doing well in school and had a close relationship with his grandmother. Also, J.G. had not resolved his issues of trust concerning his mother. Accordingly, there is sufficient evidence for the circuit court's finding that it was not appropriate to return J.G. to his mother at the time of the permanency-planning hearing in accordance with 9–27–338(c)(1). However, there was not sufficient evidence for the circuit

court to find that placement pursuant to section 9-27-338(c)(2), which authorizes the circuit court to create a plan to return the juvenile to the parent within three months of the permanency-planning hearing, was not in J.G.'s best interest.

Such a plan is appropriate if: (1) the parent is complying with the case plan and making measurable progress; (2) the parent is making significant progress toward remedying the conditions that caused the removal; and (3) the return of the juvenile will occur within three months.

Here, the circuit court found that Contreras was in compliance with the case plan, and that Contreras was making significant progress toward remedying the conditions that caused the removal. Additionally, there was no finding that the return of the juvenile could not occur within three months. In fact, we find it significant that the circuit court had only recently ordered brief, supervised visitation. Yet, at the conclusion of the permanency-planning hearing, the circuit court found it appropriate to order extended unsupervised visitation.

After reviewing the entire record, we are left with a definite and firm conviction that a mistake was committed when the circuit court granted permanent custody of J.G. to Williams and closed the case. Accordingly, we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

Reversed and remanded; court of appeals' opinion vacated.

HANNAH, C.J., CORBIN and DANIELSON, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** This case presents a very close question

in my opinion and, because it does, I would affirm the circuit court's order; I therefore respectfully dissent. As the majority opinion correctly states, we review findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *See Porter v. Arkansas Dep't of Health & Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *See id.*

In this case, I simply am not left with a definite and firm conviction that a mistake was committed. As the majority acknowledges, there was sufficient evidence to sustain the circuit court's finding that, at the time of the permanency-planning hearing, it was not in J.G.'s best interest to return him to his mother. Where the majority and I part ways is in its reversal and remand for the circuit court's further consideration of section 9-27-338(c), the plain language of which provides that a permanency goal, listed in order of preference, "shall" be entered "in accordance with the best interest of the juvenile."

After reviewing the circuit court's findings and the record in this case, I cannot say that the circuit court committed reversible error. While the majority finds that there was not sufficient evidence such that the circuit court could have found that section 9-27-338(c)(2) was an inappropriate goal, I myself can surmise at least one reason that such a plan might have been excluded from the circuit court's consideration in this case at the time of the permanency-planning hearing. The section relied on by the majority requires that the return of the juvenile to the parent shall occur "no later than three (3) months from the date of the

9

permanency planning hearing." The hearing in this matter was held in January, and it involved an eleven-year-old child who was in school at that time and doing very well in his studies. This same student had been forced to change schools several times throughout the past few years; certainly the circuit court could have considered it in his best interest to stay with his maternal grandmother rather than implement a plan under section 9-27-338(c)(2), which would have required uprooting J.G. from his school in the middle of the school year to meet the statute's three-month time constraint.[1] Admittedly, this is only speculation, but it certainly gives me pause such that I cannot reverse and remand on this basis set forth by the majority.

Again, the question presented in this case is a close one; however, our standard of review dictates a definite and firm conviction that a mistake has been made before we can reverse. Because I am not left with such a conviction after reviewing the entire evidence, I would affirm the circuit court's order.

HANNAH, C.J., and CORBIN, J., join.

*Janet Lawrence*, for appellant.

*Tabitha B. McNulty*, County Legal Operations, and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.

---

[1]At the time of the hearing, Ms. Contreras was living in Texas.