

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-994

| | |
|---|---|
| KHOSROW GYALOG<br><br>APPELLANT<br><br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN<br>SERVICES and MINOR CHILDREN<br>APPELLEES | **Opinion Delivered** May 6, 2015<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[No. J13-387-3]<br><br>HONORABLE STACEY ZIMMERMAN,<br>JUDGE<br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Khosrow Gyalog appeals the permanency-planning order, changing the goal of his children's dependency-neglect case from reunification to adoption, and the subsequent order terminating his parental rights. He argues that both orders were against the children's best interest. We affirm.

On June 6, 2013, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect as to K.G.1, then eleven years old, and K.G.2, then seven years old. The petitions were based upon their mother's drug use and the physical environment in which they were living. Gyalog, their father, was incarcerated at the time. The court entered the emergency order the same day, and on June 10, 2013, a probable-cause order was entered. On August 2, 2013, the court adjudicated the children dependent-neglected due to neglect and parental unfitness. Gyalog attended that hearing via telephone and was permitted to continue writing letters to the children. The court ordered

SLIP OPINION

DHS to facilitate weekly visits between Gyalog and the children as soon as Gyalog was released and ordered that a home study be conducted on Jeanette Rayburn, Gyalog's sister who lived in California. At a December 18, 2013 review hearing, the court ordered in-person visitation between Gyalog and the children at his work-release facility. The court noted that he had maintained contact with DHS and with the children.

Gyalog's counsel filed a motion to continue the permanency-planning hearing, scheduled for April 30, 2014, on the grounds that the home study had not been completed on Rayburn. The court took testimony from the children's therapist, who was present in the courtroom at the time, then continued the hearing until May 30, 2014. When the permanency-planning hearing resumed in May, the home-study results had not yet been returned, but the court proceeded with the hearing.

Lori Johnson, the former DHS caseworker assigned to this case, testified about the delays in conducting the home study, explaining that she had not been able to contact Rayburn for quite some time, despite leaving messages for her. She testified that Rayburn was equivocal about the placement. Johnson also testified that, even if the home-study results permitted placement with Rayburn, she would recommend against such placement because the children were now closely bonded with their foster parents, who wanted to adopt them.

The new caseworker, Margot Gaston, testified that Gyalog exhibited bizarre and overly affectionate behavior during visitation with the children, forcing them to kiss him and each other on the lips and holding them like infants. Although she had taught the children to use "safe words" should they feel uncomfortable, she testified that they never used the

SLIP OPINION

words. However, she was sufficiently concerned about Gyalog's behavior to mention it to the children's therapist. Both the CASA worker and the warden at Gyalog's work-release center testified that Gyalog's behavior was normal for a father who had not seen his children in a long time and was happy to see them. They testified that the children did not seem uncomfortable.

As to the home study, Gaston reiterated Johnson's position that, even if the home study came back in favor of placement with Rayburn, DHS would recommend termination and adoption. She explained that the children were bonded with their foster parents, while they did not have a bond with Rayburn.

Rayburn testified that DHS had contacted her as early as October or November 2013 regarding the home study, that she had gotten their phone messages, that she believed DHS was cooperating in facilitating the home study, and that she had gotten the home-study paperwork a few weeks after first speaking to a caseworker about it. She was hesitant about removing the children from their current foster placement if it was working out well and noted that she was nervous about providing for the children.

The children's therapist testified in favor of adoption, stating that the children needed permanency.

Gyalog testified, expressing his distrust in DHS and his caseworkers. He claimed that the caseworkers were lying and had purposely tried to deny him court-ordered visitation. Gyalog explained that he was still incarcerated but was housed at a work-release facility. He testified that he could not take the children at that point.

The court found that the children could not be returned to either parent, could not be placed with Rayburn or other relatives,[1] and that there was no evidence that DHS had not made efforts to complete Rayburn's home study. The court found that neither parent had made sustainable or measurable progress in working the case plan despite the fact that DHS had made reasonable efforts to provide reunification services. The court changed the goal of the case from reunification to termination and adoption.

At the termination hearing, held on August 27, 2014, the children's therapist testified that further visitation with Gyalog would be counterproductive for the children, that the children were ready to move forward with adoption, that they were making good progress in their current foster placement, that they wanted to be adopted, and that they displayed signs of anxiety around the time of the visits with their father. Caseworker Gaston testified again about Gyalog's bizarre behavior during visitation, which included his demands of physical affection and treating the children like infants.

The children's foster mother testified that they were doing very well in school, had made academic improvements since coming into care, and got along well with the other children in the foster home. She testified that the children displayed anxiety related to visits with their father. She stated that she and her husband would be interested in adopting the children.

---

[1]The trial court also explored placement with other relatives; however, none of those placements proved to be viable options. Gyalog's only arguments on appeal relate to the possibility of placement with Rayburn.

The warden and the CASA worker both testified again as to their conflicting impressions of Gyalog's behavior during visitation. The CASA worker recommended termination.

Gyalog testified and repeated his previous allegations that DHS workers had lied about why he was denied visitation, had purposely sabotaged his attempt to have the children placed with his sister in California, and had misrepresented his behavior during visitation. He testified that he had a full-time job, which he would retain upon his release. He testified that he attended AA meetings at the work-release facility and was divorced from the children's mother.

The court announced from the bench that it was terminating parental rights as to both parents.[2] The court entered a termination order on September 8, 2014. The court found that the children had been adjudicated dependent-neglected, had continued out of the custody of their parents for over twelve consecutive months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions had not been remedied. The court further found that Gyalog did not comply with the court orders, case plan, and services offered by DHS in that he remained incarcerated throughout the case and was sentenced to twenty years (twelve of those suspended) in September 2011. He could not protect the children or provide stable housing for them due to incarceration. He had complied with many requirements, such as counseling, attending AA/NA meetings, and obtaining employment, but he did not have stable housing for the children. The court found that continued contact with Gyalog was not recommended

---

[2]The mother, Rosita Gyalog, has not appealed the order terminating her parental rights.

5

SLIP OPINION

because the children needed permanency and he could not provide for them or parent them at that time. The court found that the children were adoptable, that the foster family wanted to adopt them, that adoption was in their best interest, and that they should remain in their current placement and continue counseling as recommended. This appeal follows.

We review findings in dependency-neglect proceedings de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Contreras v. Ark. Dep't of Human Servs.*, 2014 Ark. 51, at 5–6, 431 S.W.3d 297, 300 (citing *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* at 5–6, 431 S.W.3d at 300. Furthermore, this court defers to the trial court's evaluation of the credibility of witnesses. *Id.*, 431 S.W.3d at 300.

Gyalog's first issue on appeal challenges the circuit court's best-interest finding in the permanency-planning order. Before we reach the merits of his argument we must first determine whether Gyalog's appeal of the permanency-planning order was properly preserved by his notice of appeal. Rule 2(b) of the Arkansas Rules of Appellate Procedure–Civil states in relevant part that "An appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." Rule 3(e), which governs the contents of a notice of appeal, states that the notice should "(ii) designate the judgment, decree, order or part thereof appealed from" and also "(iii) designate the contents of the record on appeal." Ark. R. App. P.–Civ. 3(e)(ii) & (iii).

SLIP OPINION

In *Velazquez v. Arkansas Department of Human Services*, 2011 Ark. App. 168, we held that the appellant's arguments challenging termination of parental rights actually related to the earlier permanency-planning hearing and review hearing, neither of which was before the court because the appellant's notice of appeal failed to designate the permanency-planning order and bring up the record pertaining to the permanency-planning hearing. "While a termination order might bring up all intermediate orders, appellant did not designate the permanency-planning hearing in his notice of appeal, effectively waiv[ing]" his arguments related to the permanency-planning order. *Velazquez*, 2011 Ark. App. 168, at 5. In *Bryant v. Arkansas Department of Human Services*, 2011 Ark. App. 390, at 7, 383 S.W.3d 901, 905, we held that "Bryant failed to designate the permanency-planning hearing in her notice of appeal. Although she designated the permanency-planning order in her notice of appeal, the transcript of that hearing is not in the record."[3] In *Thornton v. Arkansas Department of Human Services*, 2012 Ark. App. 670, at 3, the appellant challenged whether DHS had made reasonable efforts to offer meaningful reunification services. We held that, since the trial court had made several findings throughout the case that DHS had made reasonable efforts, the most recent finding being in the permanency-planning order, and appellant had neither appealed those findings where applicable or designated them in his notice of appeal, he had waived his arguments regarding reunification services. In *Aka v. Jefferson Hospital Association, Inc.*, 69 Ark. App. 395, 13 S.W.3d 224 (2000), we addressed whether a notice of appeal listing a final judgment after a jury trial was sufficient to preserve the appeal of a previously entered summary-judgment order and stated that it was, because the summary-judgment order was

---

[3] We also noted that Bryant did not raise her objections to the permanency-planning order below, so they were not preserved.

SLIP OPINION

not previously appealable prior to the final judgment, and Rule 2 provides that an appeal of the final judgment also brings up all intermediate orders.

Here, there is no question that Gyalog designated the relevant portions of the record related to the permanency-planning hearing and order. The "Designation of Record" section of his notice of appeal lists, among other things, the permanency-planning order, the hearing transcript, and the hearing exhibits. Additionally, Gyalog's notice of appeal provided actual notice that he planned to challenge the permanency-planning order on appeal. He listed "the transcript of the PPH hearing held on 4/30/14 and 5/30/14 *to preserve the issues*." (Emphasis added.) Therefore, we hold that Gyalog's notice of appeal was sufficient to preserve his challenge to the permanency-planning order.

Gyalog argues that the circuit court's permanency-planning order, which changed the case goal from reunification to termination and adoption, was not in the children's best interest because placement with Rayburn was a possibility and a court-ordered home study had not yet been completed as to that placement. However, Arkansas law permits a trial court to set termination/adoption as the case goal even where a relative is available and requests custody. Ark. Code Ann. § 9-27-338(c)(1)–(6); *Davis v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 469. Arkansas Code Annotated section 9-27-338(c)(1)–(6) lists the permanency goals that the circuit court is to consider in determining the best interest of the children. The statute lists termination and adoption as a preference above permanent custodial placement with a relative, which is in keeping with the overall goal of permanency for the juvenile. Ark. Code Ann. § 9-27-338(c)(1)–(6). Moreover, the facts of this case indicate that placement with Rayburn was far from an immediately available alternative. The

court found that Rayburn was equivocal about the placement, expressed concerns about taking the children out of their foster home, and expressed concerns about being able to provide for the children. Although there was conflicting evidence as to the cause of the delay, DHS workers testified that the failure to complete a home study on Rayburn in a timely fashion was due, at least in part, to Rayburn's own failure to return phone calls and provide the necessary paperwork. There was evidence that the children were thriving in their foster home, that their foster parents were interested in adopting them, and that they need permanency, all of which supports a finding that termination and adoption would be in their best interest. The children had been in foster care for approximately a year, there was no immediate possibility of placing them in Gyalog's care or placing them with a relative, they were thriving with foster parents who were interested in adopting them, and their therapist stressed their need for a permanent placement. The circuit court's finding that termination and adoption would be in the children's best interest was not clearly erroneous.

Gyalog raises the same argument in support of his next point on appeal. He claims that the trial court's finding that it was in the children's best interest to terminate his parental rights was clearly erroneous because it could have placed the children with Rayburn until his release from prison. As discussed above, the trial court's finding was not clearly erroneous because Gyalog was sentenced to a lengthy prison term, Rayburn was equivocal about taking the children and was not an immediately available option for placement, and the children were thriving with their foster parents, who were interested in adopting them and providing permanency.

Affirmed.

HOOFMAN and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.