Bart F. Virden, Judge, concurring. The majority concludes the issue raised by the appellant is not properly preserved. I write separately because I disagree that affirming should rest on the lack of distinction between the present ease and Philpott v. Arkansas Department of Human Services, 2011 Ark. App. 572, 2011 WL 4477860. In Philpott, the only person to testify at the termination hearing besides the appellant was a DHS caseworker. Id. at 4. At the close of the caseworker’s testimony, and in response to direct questioning by the court, the caseworker testified that she had been a caseworker for almost seventeen years and had -previously testified in termination proceedings involving Indian children. Id. at 5. On appeal, Phil-pott challenged the qualifications of the caseworker, arguing, that she was not a qualified expert witness. Id. at 6. In the present case,. Johnson argues that there was no evidence presented, in the form of expert testimony and does not challenge the qualifications of an expert—because there was no expert. Instead, she contends that DHS failed to meet its required burden of proof by failing to present the required evidence, thus making it- a | r,challenge to the sufficiency of-the evidence. In a nonjury trial, a party who does not challenge the sufficiency of the evidence does not waive the right to do so on appeal. Contreras v. Ark. Dep’t of Human Servs., 2014 Ark, 51, at 2, 431 S.W.3d 297, 298. The Indian Child Welfare Act is a federal statute that sets certain “minimum Federal standards for the removal of Indian children from their families and the placement of such children -in foster or adoptive homes which reflect the unique values of Indian culture.” 25 U.S.C. § 1902. When the Act applies, a state court may not terminate a parent’s rights as to an Indian child unless (1) the court determines that “continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child,” and (2) the court’s determination is supported by evidence beyond a reasonable doubt that includes testimony from a “qualified expert witness.” 25 U.S.C. § 1912(f). While not binding on this court, the Bureau of Indian Affairs has promulgated guidelines for state courts to assist them in defining a qualified expert witness under the Act. Burks v. Ark. Dep’t of Human Servs., 76 Ark. App. 71, 76, 61 S.W.3d 184, 187 (2001). Those likely to meet the requirements of a qualified expert witness for purposes of Indian child-custody proceedings include: (i) A. member of the Indian child’s tribe wfio is recognized by the tribal community as knowledgeable in tribal customs [[Image here]] (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians (iii) A professional person having substantial education and experience in the area of his or her specialty. Id. , • |7Here, we know that Tad Tehee, a representative of the Cherokee Nation, began participating in the proceedings as early as April 2014. He was also present at the termination hearing, where he offered his opinion to the court that the Cherokee Nation agreed with the ad.litem’s testimony that returning the juveniles to Johnson would cause emotional and physical damage to the juveniles and that Johnson’s parental rights should be. terminated. On appeal, Johnson argues that because Te-hee was not sworn in, he cannot be considered as a qualified expert witness; however, because she did not object to the statement at trial, she is precluded from arguing its introduction on appeal. See, e.g., Renfro v. Ark Dep’t of Human Servs., 2011 Ark. App. 419, 385 S.W.3d 285. Moreover, in her reply, she concedes that “[t]he circuit court at all stages of the proceeding made the required ICWA findings beginning at the adjudication stage all the way through until the termination order. Furthermore, the Cherokee Nation appeared ' and participated at all stages of the case—even offering ^recommendation at the termination heáring.” See also Burks, supra, 76 Ark. App. at 78, 61 S.W.3d at 189 (“We note that the Cherokee Nation agreed at trial that the parental rights of appellants should be -terminated.”). Because of the participation and oversight of the Cherokee Nation representative,. I cannot say the purpose of the Act was compromised in this case. Accordingly, I would affirm.