SLIP OPINION

Cite as 2016 Ark. 441

# SUPREME COURT OF ARKANSAS

No. CV–16–555

| | |
|---|---|
| | **Opinion Delivered** December 8, 2016 |
| RAY ELLIS<br><br>APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT [JV-2014-19] |
| V. | HONORABLE RALPH WILSON, JR., JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND C.E., A MINOR CHILD<br><br>APPELLEES | <u>REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

Ray Ellis (Ray) appeals from the circuit court's order of permanency planning for his son, C.E. In that order, the circuit court denied his motion to consider the home study regarding C.E.'s paternal uncle, Josh Ellis, and Josh Ellis's wife, Tamara Ellis (the Ellises, or individually, Josh and Tamara). Further, the court found that the continued custody of C.E. with the Arkansas Department of Human Services (ADHS) was in C.E.'s best interest and that the goal with respect to C.E. should be changed to adoption. The court allowed the foster parents to intervene in the case. On appeal, Ray contends that the circuit court clearly erred by denying his motion to place C.E. in the custody of the Ellises. Ray also contends that the circuit court clearly erred in changing the permanency goal to adoption. We reverse and remand the circuit court's decision.

Following C.E.'s birth on August 18, 2014, the circuit court entered on August 20,

2014, an ex parte order finding probable cause to believe C.E. was dependent-neglected. The court ordered C.E. to be removed from his mother, Kayann Tate, and placed in ADHS's custody. The circuit court noted that Tate had tested positive for drugs and that her two other children—who were not Ray's biological children—were in foster care. On August 22, 2014, a second probable-cause order was entered declaring Ray as C.E.'s legal and biological father and ordered him to submit to counseling for domestic physical abuse. On November 12, 2014, the circuit court entered an adjudication order in which it found C.E. dependent-neglected, noting Tate's drug use. The court ordered ADHS to continue its custody of C.E. and to make referrals for counseling for domestic abuse for Ray. The court also ordered a home study on "any interested relative."

On December 18, 2014, the court ordered a home study of the Ellises. The order noted that Josh Ellis is enlisted in the United States Army and resides in Germany. In a review order filed the same day, the circuit court found that Ray had partially complied with the case plan, noting that he had begun, but not yet completed, parenting classes, had attended his drug-and-alcohol assessment, had stable housing, and was employed. The court noted that he had not attended visitation since mid-November but that he had stated that his work as a truck driver had prevented him from attending visitation and parenting classes.

According to the home study dated March 4, 2015, there were no allegations of spousal or child abuse or neglect against the Ellises in the Army Central Registry, and there were no negative findings from background checks conducted on the Ellises. It noted that the Ellises had undergone national-security background checks and were granted security

clearances, attesting to their trustworthiness to access classified national-security information. Also, there were no significant findings or issues that would limit the Ellises' ability to serve as guardians for C.E. The study noted that review of their medical records did not show any significant findings that would preclude the family from caring for C.E. Also, their house was orderly and there were no safety issues that had not been remedied, and the Ellises could obtain an apartment with an additional bedroom for C.E. under military guidelines. It noted that another minor was in the home who acted appropriately and that the Ellises had a pet dog of even temperament. The Ellises were described as having a stable and well-regimented routine. Josh had a balance between home and his duties; Tamara was involved in school and volunteer activities. Tamara's mother, whose history had also been reviewed on the United States Army Registry and who had completed a comprehensive psychosocial history and assessment, served as a backup child-care provider for the family. The study concluded that the adults functioned as a unit and maintained a stable, supportive environment. The report noted that their minor child was a kindergarten student and that there were no concerns regarding discipline of the minor child. Further, the report indicated that the family was highly motivated to have C.E. join them.

On July 27, 2015, Matthew and Stephanie Cole, C.E.'s foster parents, sought to intervene in the dependency-neglect case, stating that ADHS had placed C.E. in their foster home and that C.E. had resided there since August 24, 2014. The Coles sought to intervene because they wanted to adopt C.E. On August 3, 2015, Ray filed a motion urging the circuit court to consider and approve the home study and place C.E. with the Ellises. In response to

the Coles, Ray sought to dismiss the Coles' motion to intervene. He cited to statutory authority that in all custodial placements by ADHS in foster care or adoption, the court "shall" give preferential consideration to an adult relative over a nonrelated caregiver. Ray asserted that while he might "appreciate the care" that the Coles had provided C.E., that care did not give the Coles the "right to adopt the minor child." He further asserted that the Coles had "confused their role as foster parents and now seek to adopt the minor child."

On August 28, 2015, the court held a permanency-planning hearing for C.E. At the hearing, it was noted that the court had not conducted a review hearing on C.E.[1] The record shows that a review order regarding C.E. was entered December 18, 2014, and that there was not a six-month review hearing afterward. The court first considered the Coles' motion to intervene. Initially, the court denied the motion to intervene, stating that it was premature, but that the court would readdress the issue if the case goal later became adoption.

Patricia Herring, the ADHS caseworker assigned to the case, testified that ADHS

---

[1]Arkansas Code Annotated section 9-27-337 (Repl. 2015) provides, in part, as follows:
(a)(1) The court shall review every case of dependency-neglect or families in need of services when:
> (A) A juvenile is placed by the court in the custody of the Department of Human Services or in another out-of-home placement until there is a permanent order of custody, guardianship, or other permanent placement for the juvenile; or
> (B) A juvenile is returned to the parent from whom the child was removed, another fit parent, guardian, or custodian and the court has not discontinued orders for family services.
(2)(A) The first six-month review shall be held no later than six (6) months from the date of the original out-of-home placement of the child and shall be scheduled by the court following the adjudication and disposition hearing.
> (B) It shall be reviewed every six (6) months thereafter until permanency is achieved.

recommended that C.E. be placed in the custody of the Ellises, stating that it would be in C.E.'s best interest. She noted that when there is an available relative, ADHS places children with the relatives.

In its order filed September 14, 2015, the court ordered that C.E. was to remain in his foster home with the Coles. The court changed C.E.'s case goal to adoption. The court granted the Coles' motion to intervene. The court denied the motion to consider the home study. In a subsequent order, the court ordered that ADHS continue to provide reunification services to Ray, with the exception of visitation, pending any hearing on the termination of parental rights. The court reserved the issue of visitation for a future hearing. The circuit court certified its orders as final and thus appealable

This court reviews findings in dependency-neglect proceedings de novo, but the circuit court's findings will not be reversed unless the findings are clearly erroneous. *Ponder v. Ark. Dep't of Human Servs.*, 2016 Ark. 261, at 2, 494 S.W.3d 426, 427. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* at 2–3, 494 S.W.3d at 427. While we give due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given their testimony, the circuit court's conclusions of law are given no deference. *Id.* at 3, 494 S.W.3d at 427.

On appeal, Ray argues that the circuit court's decision acts as a severance of natural family ties. He contends that the court's denial of the motion to place C.E. with the Ellises violated the state's public policy "[t]o preserve and strengthen the juvenile's family ties when

it is in the best interest of the juvenile." Ark. Code Ann. § 9-27-302(2)(A) (Repl. 2015). He further contends that the circuit court failed to follow the statutes giving relatives preferential consideration for placement of children, specifically Arkansas Code Annotated section 9-27-355(b)(1), and Arkansas Code Annotated section 9-28-105. Further, Ray asserts that the permanency-planning statute, Arkansas Code Annotated section 9-27-338(c)(3), provides that placement of the child with a custodian, such as the Ellises, has priority in the statutory scheme as compared to changing the goal to adoption, which is a lesser preference. Ray argues that if "the circuit court had placed C.E. in the relative's custody as required by law and as requested prior to the permanency planning hearing, then C.E. would have been in the custody of a relative," which again is a higher preference under the statutory scheme than adoption. Ray asks that this court reverse the order of the circuit court, remand the case for further proceedings, and instruct the circuit court to give C.E.'s relatives preferential consideration and comply with the statutory preference to authorize a plan to place C.E. with a relative.

In response, the ad litem asserts that adoption was an appropriate goal because C.E. has been with the Coles, the foster parents, for one year, and that during that time, C.E. has bonded with them, and they want to adopt C.E. The ad litem cites to testimony from Billie Williams, a program assistant with ADHS, that C.E. had developed a strong bond with the Coles and that his needs are being met in the foster home. The ad litem also cites to testimony from Kim Wilson, an ADHS foster-care supervisor, to the effect that she did not have any concerns about the Coles' care of C.E. and that, while ADHS was recommending placement

SLIP OPINION

with the Ellises, it would also be in C.E.'s best interest to remain with the Coles. The ad litem also notes that C.E. has never known the Ellises, who are stationed in Germany. The ad litem suggests that according to cases decided by the Arkansas Court of Appeals, the statutory preference for relative placement comes into play only at the initial placement of the minor. Finally, the ad litem cites Arkansas Code Annotated section 9-27-338(c), the statute governing permanency-planning proceedings, and asserts that to place C.E. with the Ellises, the circuit court was required to make requisite findings, which it did not do.

In its brief, ADHS argues that the preference for relative placement in Arkansas Code Annotated sections 9-27-355 and 9-28-105 controlled this case. As for the cases from the Arkansas Court of Appeals, ADHS notes that those cases were decided in the context of termination of parental rights, while this case involves a request for placement with a relative made before the case goal was changed to adoption. ADHS further asserts that there was no evidence suggesting that it would not be in C.E.'s best interest to be placed with the Ellises, and the circuit court instead granted the foster parents a de facto preference for placement over a fit biological relative.

Arkansas Code Annotated section 9-27-355(b)(1) provides that "[a] relative of a juvenile placed in the custody of the Department of Human Services shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the best interest of the juvenile to be placed with the relative caregiver." Similarly, Arkansas Code Annotated section 9-28-105 provides as follows:

> In all custodial placements by the Department of Human Services in foster care or adoption, preferential consideration shall be given to an adult relative over a

nonrelated caregiver, if:
>    (1) The relative caregiver meets all relevant child protection standards; and
>    (2) It is in the best interest of the child to be placed with the relative caregiver.

We are persuaded by the arguments of Ray and ADHS that the circuit court's findings are clearly erroneous.

There were numerous errors that occurred in this case. On December 18, 2014, the date on which the only review hearing was held, the court ordered a home study of the Ellises. The home study, dated March 4, 2015, did not show anything to suggest that it would not be in C.E.'s best interest to be placed with the Ellises, nor was any other evidence adduced at the permanency-planning hearing to show that the Ellises were unfit. Under Arkansas Code Annotated section 9-27-337, the court "shall review" all cases every six months when the juvenile has been placed by the court in the custody of the Department of Human Services. It was clear error for the court not to hold the hearing and it was equally incumbent on ADHS, parent-counsel, and most importantly, the ad litem to demand such hearing. Had the hearing been held before the end of June, the court would have had the completed and approved home study to consider along with the statutory preference for relative placement as set out in Arkansas Code Annotated section 9-27-355(b)(1). Instead, the child remained in foster care with the foster parents, and on July 27, 2015, the Coles sought to intervene because they wanted to adopt C.E. On August 3, 2015, Ray filed a motion urging the circuit court to consider the home study. Instead, the circuit court proceeded with a permanency-planning hearing at which it denied the motion to consider placement with the Ellises and further granted the foster family's motion to intervene.

We cannot countenance the failure to apply the General Assembly's public policy of strengthening familial bonds and its statutory direction to prefer an adult relative placement over a nonrelated caregiver in all custodial placements by ADHS in foster care or adoption. While a circuit court may raise considerations relating to permanency planning during a review hearing, in this instance, the foster family's motion to intervene occurred after the time for a review hearing had passed. If a review hearing had been timely held, the considerations of the foster family and their extended care of C.E. would not have come into play, and the circuit court would have applied the statutory preference for relative placement. Moreover, contrary to the ad litem's argument, it simply cannot be the law that strong bonds with a foster family can defeat the statutory preference for relative placement. If that were the case, then parents and relatives would always be at risk of losing permanent custody of a child in circumstances in which an infant resided with a foster family that provided good care for an extended period of time.

The circuit court erred by failing to conduct the mandatory review hearing and apply the statutory preference for relative placement to the Ellises upon receipt of the satisfactory home study, or consider it upon the motion for approval of the home study and placement with them. Thus, we need not consider the preferences outlined in the permanency-planning statute, Arkansas Code Annotated section 9-27-338(c), because when the matter eventually came before the court, its priority was to conduct the statutory review hearing and consider the relative placement, and only then should the court have considered permanency planning. Finally, the ad litem's argument that the statutory preference applies only to the initial

placement is clearly wrong. Nowhere in section 9-27-355(b)(1) is there a limit to "initial placement." To the extent that the court of appeals has said this in *Davis v. Arkansas Department of Human Services*, 2010 Ark. App. 469, 375 S.W.3d 721 and other cases, we overrule them.

Accordingly, we reverse and remand the circuit court's decision. We conclude that, on remand, ADHS must determine the continued accuracy of the March 4, 2015 home study. Further, the circuit court should then hold a hearing at which it considers the home study of the Ellises, ADHS's recommendation regarding placement with the Ellises, and the General Assembly's statutory preference stated in Arkansas Code Annotated sections 9-27-355(b)(1) and 9-28-105 that directs a preference for placement of a minor child with his or her relatives, and determine the best interests of C.E. in light of the statutory preference for relative placement.[2]

Reversed and remanded; court of appeals opinion vacated.

DANIELSON, J., dissents.

**PAUL E. DANIELSON, Justice, dissenting.** I strongly dissent from the majority's ill-advised decision in this case and from its misapprehension of the record and the applicable law. The majority has failed to apply the relevant statute and, even more alarmingly, has failed to

---

[2]The dissenting justice sprinkles false and misleading assertions throughout his opinion. Contrary to his claim, the statutory preference for relative placement was raised below, ruled on, and argued on appeal. In contrast, the issues he argues relating to the permanency-placement statute were not even argued on appeal. Rather, he adopts an analysis that was created in toto by the Arkansas Court of Appeals in its opinion, which we vacated. Finally, as noted in this opinion, and contrary to the dissenting justice's assertion, C.E.'s best interests will be considered on remand.

even consider the best interest of the minor child at issue. In short, the court's decision violates the clear policy of this state that "the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings." Ark. Code Ann. § 9–27–102 (Repl. 2015).

First, it is true that the Arkansas Juvenile Code sets forth a general preference for relative placement. *See* Ark. Code Ann. § 9–27–355(b)(1); *see also* Ark. Code Ann. § 9–28–105. However, it has long been the law in Arkansas that a general statute must yield to a specific statute involving a particular subject matter. *See, e.g.*, *Lambert v. LQ Mgmt., L.L.C.*, 2013 Ark. 114, 426 S.W.3d 437 (citing *Comcast of Little Rock, Inc. v. Bradshaw*, 2011 Ark. 431, 385 S.W.3d 137). This case is an appeal from a permanency-planning order. The Juvenile Code contains a specific statute addressing permanency planning, and it should be the focus of our analysis. Pursuant to Arkansas Code Annotated section 9–27–338(c), the circuit court was required to enter a permanency goal based on the facts of the case and in accordance with the best interest, health, and safety of C.E. Section 9–27–338(c) lists possible permanency goals in order of preference. "Authorizing a plan for adoption with the department's filing a petition for termination of parental rights" is the fourth most preferred goal; "[a]uthorizing a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative" is the sixth most preferred goal. *See* Ark. Code Ann. § 9–27–338(c)(4) & (6). Accordingly, the circuit court did not err in giving preference to the goal of adoption—either by C.E.'s foster parents or by his paternal uncle—over the goal of permanent custody with the uncle. This preference is "in keeping with the overall goal of permanency for the juvenile." *Gyalog v. Ark. Dep't of*

*Human Servs.*, 2015 Ark. App. 302, at 8, 461 S.W.3d 734, 739.

I am frankly confused by the majority's excuse for not applying the permanency-planning statute on appeal from a permanency-planning order. As best I can tell, the majority seems to suggest that the circumstances existing at the time of the August 2015 permanency–planning hearing would have been different had a review hearing been held in June 2015. There is simply no basis in the record for this speculation. In any event, the failure to hold a review hearing was not objected to or ruled on below and has not been raised by the parties on appeal. This court has said time and again that it will not make the parties' arguments for them, nor will we address arguments that have not been properly preserved. *See, e.g.*, *Bradley v. State*, 2015 Ark. 144, at 5, 459 S.W.3d 302, 305 (quoting *Edwards v. Edwards*, 2009 Ark. 580, at 8, 357 S.W.3d 445, 450) (stating that, absent an issue of subject-matter jurisdiction, "an appellate court will not address an issue if it was not presented to the trial court, ruled upon by the trial judge, and argued by the parties on appeal"); *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, at 8, 449 S.W.3d 283, 288 (quoting *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, at 7, 431 S.W.3d 303, 307) (stating that "a contemporaneous objection is required in order to preserve an issue for appeal"); *Diamante, LLC v. Dye*, 2013 Ark. 501, at 18, 430 S.W.3d 710, 722 (stating that this court "will not address an argument on appeal if it has not been argued before the circuit court or if a party has failed to obtain a ruling from that court"). In my view, the majority has engaged in analytical acrobatics in an effort to reach the result it desires.[3]

---

[3]Contrary to the majority's claim, I have not argued that the issue of the statutory preference for relative placement was not properly preserved; instead, I have pointed out that

But my most profound disagreement with the majority's decision is with its utter disregard of C.E.'s best interest. It is well settled that, in dependency-neglect proceedings, the best interest of the child is the primary and overriding consideration to which all others must yield. *See, e.g.*, *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). And the statutes setting forth the general preference for relative placement, which the majority relies on to the exclusion of all other law, expressly condition their applicability on the child's best interest. Specifically, a relative shall be given preferential consideration for placement only if he or she "meets all relevant child protection standards" *and* "it is in the best interest of the juvenile to be placed with the relative caregiver. Ark. Code Ann. § 9-27-355(b)(1); *see also* Ark. Code Ann. § 9-28-105. The majority gives only passing mention to this most crucial requirement, summarily concluding that the home study on Josh and Tamara Ellis did not indicate that it would *not* be in C.E.'s best interest to be placed in their custody. This conclusion is legally insufficient, fails to give due deference to the circuit court's findings as required, and ignores other evidence in the record.

In my opinion, the circuit court did not clearly err in finding that it was in C.E.'s best interest to remain in DHS custody, and in his current foster placement, pending a termination hearing, rather than be placed in the permanent custody of his uncle. The evidence adduced at the permanency-planning hearing showed that Josh Ellis, though biologically related to C.E., is a total stranger to him. In addition, the fact that Josh Ellis lives in Germany would make it difficult, if not impossible, for DHS to continue to monitor C.E.'s welfare and for the circuit

---

the *failure to hold a review hearing* was not properly preserved and has not been raised by the parties on appeal.

court to continue to assess the permanency plan, which is required pursuant to Arkansas Code Annotated section 9-27-338(a)(2). On the other hand, the evidence showed that C.E.'s foster parents have been his caretakers essentially since his birth, that his needs are being met "above and beyond" in their care, and that he has bonded with them as the only parents he has ever known.

The only shred of evidence before the circuit court regarding Josh and Tamara Ellis was their home study. They did not appear for the hearing, and there is no indication that they participated in the case at all with the exception of submitting to the home study. The majority makes much of the Department's recommendation that C.E. be placed in his uncle's permanent custody. However, the family-service worker, program assistant, and foster-care supervisor who were assigned to the case and testified at the hearing conceded that the biological relationship between C.E. and his uncle was the *only* basis on which their recommendation was formed.[4] The foster-care supervisor specifically stated that she had never met Josh Ellis and could not make a best-interest recommendation. All three DHS officials acknowledged that all of C.E.'s needs were being met by his foster parents and that it might be in his best interest to remain in their care. It should go without saying that a proper best-interest analysis necessarily encompasses much more than biological ties.

Moreover, on the subject of biological ties, the majority complains that the circuit court's decision severed C.E.'s relationship with his natural family and violated this state's public policy "[t]o preserve and strengthen the juvenile's family ties when it is in the best interest of

---

[4]One official did say that she had concerns about the "animosity" between C.E.'s biological parents and his foster parents, but she provided no further details.

the juvenile." Ark. Code Ann. § 9-27-302(2)(A). However, the majority focuses only on C.E.'s biological relationship with his uncle, whom he has never met, and ignores the fact that placing him in his uncle's permanent custody in Germany would sever the connection to his two biological siblings, with whom he shares an actual, meaningful relationship. Throughout this case, C.E. enjoyed regular visitation with both his sister, who had been placed in her father's permanent custody, and his brother, who was also in foster care. In fact, there was testimony that both sets of foster parents and C.E.'s sister's father facilitated visitation among the children beyond what had been ordered in the case. Additionally, there was ample testimony indicating that C.E. is bonded to his siblings; the foster-care supervisor even acknowledged that it might be in his best interest to continue in his current foster-care placement so that he could remain in contact with his siblings. The circuit court's permanency-planning order mandated "continuing, regular and frequent visitation" among the children. When questioned on this issue, the DHS officials were unable to point to any evidence that Josh and Tamara Ellis could or would facilitate continued contact between C.E. and his siblings if he were placed in their custody. I am troubled by the majority's failure to recognize the reality of this situation.

I am compelled to point out the absurdity in the idea of taking a now two-year-old child away from the only family he has ever known—his foster parents and his biological siblings—and sending him to another country to live with an uncle he has never met, on the sole basis that he shares a biological connection with the uncle. The majority proposes that the circuit court do exactly that. The majority's decision sets an alarmingly dangerous precedent

15

and does an immense disservice to the dependent-neglected child at issue in this case.

For these reasons, I dissent.

*Tabitha McNulty*, Arkansas Public Defender Commission, Dependency–Neglect Appellate Division.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.