Paul E. Danielson, Justice, dissenting. I strongly dissent from the majority’s ill-advised decision in this case and from its misapprehension of the record and the applicable law. The majority has failed to apply the relevant statute and, even more alarmingly, has failed to lleven consider the best interest of the minor child at issue. In short, the court’s decision violates the clear policy of this state that “the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings.” Ark. Code Ann. § 9-27-102 (Repl. 2015). First, it is true that the Arkansas Juvenile Code sets forth a general preference for relative placement. See Ark. Code Ann. § 9-27-355(b)(l); see also Ark. Code Ann. § 9-28-105. However, it has long been the law in Arkansas that a general statute must yield to a specific statute involving a particular subject matter. See, e.g., Lambert v. LQ Mgmt., L.L.C., 2013 Ark. App. 114, 426 S.W.3d 437 (citing Comcast of Little Rock, Inc. v. Bradshaw, 2011 Ark. 431, 385 S.W.3d 137). This case is an appeal from a permanency-planning order. The Juvenile Code contains a specific statute addressing permanency planning, and it should be the focus of our analysis. Pursuant to Arkansas Code Annotated section 9-27-338(c), the circuit court was required to enter a permanency goal based on the facts of the case and in accordance with the best interest, health, and safety of C.E. Section 9-27-338(c) lists possible permanency goals in order of preference. “Authorizing a plan for adoption with the department’s filing a petition for termination of parental rights” is the fourth most preferred goal; “[ajuthorizing a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative” is the sixth most preferred goal. See Ark. Code Ann. § 9-27-338(c)(4) & (6). Accordingly, the circuit court did not err in giving preference to the goal of adoption—either by C.E.’s foster parents or by his paternal uncle—over the goal of permanent custody with the uncle. This preference is “in keeping with the overall goal of permanency for the juvenile.” Gyalog v. Ark. Dep’t of Human Servs., 2015 Ark. App. 302, at 8, 461 S.W.3d 734, 739. I am frankly confused by the majority’s excuse for not applying the permanency-planning statute on appeal from a permanency-planning order. As best I can tell, the majority seems to suggest that the circumstances existing at'the time of the August 2015 permanency-planning hearing would have been different had a review hearing been held in June 2015. There is simply no basis in the record for this speculation. In any event, the failure to hold a review hearing was not objected to or ruled on below and has not been raised by the parties on appeal. This court has said time and again that it will not make the parties’ arguments for them, nor will we address arguments that have not been properly preserved. See, e.g., Bradley v. State, 2015 Ark. 144, at 5, 459 S.W.3d 302, 305 (quoting Edwards v. Edwards, 2009 Ark. 580, at 8, 357 S.W.3d 445, 450) (stating that, absent an issue of subject-matter jurisdiction, “an appellate court will not address an issue if it was not presented to the trial court, ruled upon by the trial judge, and argued by the parties on appeal”); Ingle v. Ark. Dep’t of Human Servs., 2014 Ark. 471, at 8, 449 S.W.3d 283, 288 (quoting Ingle v. Ark Dep’t of Human Servs., 2014 Ark. 53, at 7, 431 S.W.3d 303, 307) (stating that “a contemporaneous objection is required in order to preserve an issue for appeal”); Diamante, LLC v. Dye, 2013 Ark. 501, at 18, 430 S.W.3d 710, 722 (stating that this court “will not address an argument on appeal if it has not been argued before the circuit court or if a party has failed to obtain a ruling from that court”). In my view, the majority has engaged in analytical acrobatics in an effort to reach the result it desires.[3] I iaEut my most profound disagreement with the majority’s decision is with its utter disregard of C.E.’s best interest. It is well settled that, in dependency-neglect proceedings, the best interest of the child is the primary and overriding consideration to which all others must yield. See, e.g., Baker v. Ark. Dep’t of Human Servs., 340 Ark. 42, 8 S.W.3d 499 (2000). And the statutes setting forth the general preference for relative placement, which the majority relies on to the exclusion of all other law, expressly condition their applicability on the child’s best interest. Specifically, a relative shall be given preferential consideration for placement only if he or she “meets all relevant child protection standards” and “it is in the best interest of the juvenile to be placed with the relative caregiver. Ark. Code Ann. § 9—27—355(b)(1); see also Ark. Code Ann. § 9-28-105. The majority gives only passing mention to this most crucial requirement, summarily concluding that the home study on Josh and Tamara Ellis did not indicate that it would not be in C.E.’s best interest to be placed in their custody. This conclusion is legally insufficient, fails to give due deference to the circuit court’s findings as required, and ignores other evidence in the record. In my opinion, the circuit court did not clearly err in finding that it was in C.E.’s best interest to remain in DHS custody, and in his current foster placement, pending a termination hearing, rather than be placed in the permanent custody of his uncle. The evidence adduced at the permanency-planning hearing showed that Josh Ellis, though biologically related to C.E., is a total stranger to him. In addition, the fact that Josh Ellis lives in Germany would make it difficult, if not impossible, for DHS to continue to monitor C.E.’s welfare and for the circuit [ 14court to continue to assess the permanency plan, which is required pursuant to Arkansas Code Annotated section 9-27-338(a)(2). On the other hand, the evidence showed that C.E.’s foster parents have been his caretakers essentially since his birth, that his needs are being met “above and beyond” in their care, and that he has bonded with them as the only parents he has ever known. The only shred of evidence before the circuit court regarding Josh and Tamara Ellis was their home study. They did not appear- for the hearing, and there is no indication- that they participated in the case at all with the exception of submitting to the home study. The majority makes much of the Department’s recommendation that C.E. be placed in his uncle’s permanent custody. However, the family-service worker, program assistant, and foster-care supervisor who were assigned to the-case and testified at the hearing conceded that 'the biological relationship between C.E. and his uncle was the only basis on which their recommendation was formed.[4] The foster-care supervisor specifically stated that she had never met Josh Ellis and could not make a best-interest recommendation. All three DHS officials acknowledged that all of C.E.’s needs were being met by his foster parents and that it might be in his best interest to remain in their care. It should go without saying that a proper best-interest analysis necessarily encompasses much more than biological ties. , Moreover, on the subject of biological ties, the majority complains that the circuit court’s decision severed C.E.’s relationship with his natural family and violated this state’s public policy “[t]o preserve and strengthen the juvenile’s family ties when it is in the best interest of hfithe juvenile.” Ark. Code Ann. § 9-27~302(2)(A). However, the majority focuses only on C.E.’s biological relationship with his .uncle, whom he has never met, and ignores the fact that placing him in his uncle’s permanent custody in Germany would sever the connection to his two biological siblings, with whom he shares an actual, meaningful relationship. Throughout this case, C.E. enjoyed regular visitation with both his sister, who had been placed in her father’s permanent custody, and his brother, who was also in foster care. In fact, there was testimony that both sets of foster parents and C.E.’s sister’s father facilitated visitation among the children beyond what had been ordered in the case. Additionally, there was ample testimony indicating that C.E. is bonded to his siblings; the foster-care supervisor even- acknowledged- that it might be in his best interest to continue in his - current foster-care placement so that he could remain in contact with his siblings. The circuit court’s permanency-planning order mandated “continuing, regular and frequent visitation” among the children. When questioned on this issue, the DHS officials were unable to point to any evidence that Josh and Tamara Ellis could or would facilitate continued contact between C.E. and his siblings if he were placed in their custody. I am troubled by the majority’s failure to recognize the reality of this situation. I am compelled to point out the absurdity in the idea of taking a now two-year-old child away from the only family he has ever known—his foster parents and his biological siblings—and sending him to another country to live with an unclé he has never met, on the sole basis that he shares a biological connection with the uncle. The majority proposes that the circuit court do exactly that. The majority’s decisibn sets an alarmingly dangerous precedent l^and does an immense disservice to the dependent-neglected child at issue in this case. For these reasons, I dissent. . Contrary to the majority’s claim, I have not argued that the issue of the statutory preference for relative placement was not properly preserved; instead, I have pointed out that the failure to hold a review hearing was not properly preserved and has not been raised by the parties on appeal. . One official did say that she had concerns about the "animosity” between C.E.'s biological parents and his foster parents, but she provided no further details.